## MATTER OF KOEHNE

### In VISA PETITION Proceedings

### A-10750041

#### *Decided by Board May 8, 1963*

A divorce decree granted in absentia in Hungary in 1962 to two nationals of that country then domiciled and physically present in New York is, in the exercise of comity, recognized as valid by the State of New York where the marriage occurred in Hungary and both parties entered appearance through counsel.

The petitioner, a native and national of Hungary, has resided in the United States since her admission for lawful permanent residence at the port of Newark, New Jersey on December 31, 1956. She seeks third preference classification under section 203(a)(3) of the Immigration and Nationality Act (8 U.S.C. 1153(a)(3)) for her spouse, a native of Germany, whom she married at New York City on August 2, 1962.

The District Director at New York denied the petitioner's application on the ground that a Hungarian divorce decree dissolving a former marriage of the petitioner is a nullity because it was obtained in absentia while both the plaintiff and the defendant (the petitioner herein) were domiciled and physically present in the State of New York. The petitioner appeals from the District Director's decision that she is not the lawful spouse of the beneficiary for immigration purposes.

The facts concerning the petitioner's marital status are as follows. She married one Laszlo Deme at Budapest, Hungary on August 2, 1955. They emigrated to the United States in the winter of 1956 and became residents of the City of New York in the spring of 1957. The petitioner separated from her Hungarian spouse in the fall of 1960. The plaintiff husband filed an action for a divorce in the Central District Court at Budapest, Hungary in February of 1962.

The divorce decree, dated April 24, 1962, discloses that the plaintiff husband and defendant wife (petitioner herein) entered their appearance in the Hungarian court through counsel; that evidence in the form of affidavits was presented to the court; that the defendant wife

raised no objection to dissolving the marriage; and that neither of the parties appeared before the Hungarian court during the divorce proceeding. It appears that the Hungarian court assumed jurisdiction of the parties on the ground that Budapest was the situs of the marital res by reason of the marriage in that city on August 2, 1955 and the fact that the appearance was voluntary on the part of both parties who were then nationals of Hungary.

The issue before us is whether the marriage of the petitioner and the beneficiary at New York City on August 2, 1962 is a valid marriage for immigration purposes in light of the facts set forth above. The validity of a marriage for immigration purposes is governed by the law of the place of celebration, in this case the State of New York. *Matter of P—*, 4 I. & N. Dec. 610, A.G., March 18, 1962.

The District Director concludes that under the Civil Practice Act of the State of New York [1] the Supreme Court has exclusive jurisdiction of matrimonial actions, that adultery is the only ground for an absolute divorce and that the statute has certain jurisdictional requirements with regard to the residence of the defendant and the service of the complaint which were not met in the instant case.

We agree with the District Director that the Civil Practice Act of the State of New York controls with regard to whether the State of New York is required to accord recognition under the full faith and credit clause of the Constitution to a divorce decree awarded by another state to a party or parties domiciled in the State of New York. Cf. *Glaser v. Glaser*, 376 N.Y. 296, 12 N.E. 2d 305. However, when dealing with a divorce granted by the court of a foreign country, the full faith and credit clause of the Constitution does not apply and the question is solely one of comity. *Gould v. Gould*, 235 N.Y. 14, 138 N.E. 490, C.A.N.Y., 1923.

The courts of the State of New York in the exercise of comity have on several occasions recognized foreign divorce decrees where there is a showing, as in the case before us, that the foreign court assumed jurisdiction over the marital res by reason of the fact that the marriage had been celebrated within the jurisdiction of the court and over the parties by reason of their voluntary appearance and joinder although they were never physically before the foreign court and at least one

---

[1] Section 1147 of the Civil Practice Act, State of New York, provides in substance that an action for divorce on the ground that the defendant committed adultery will lie (1) where both parties are residents of the state in which the offense was committed (2) where the parties were married in the State of New York (3) where the plaintiff resided in the state when the offense was committed and is a resident thereof when the action is commenced (4) where the offense was committed within the state and the injured party when the action is commenced is a resident of the state.

of the parties continued to be a resident of the State of New York.[2]
The Supreme Court of New York held in the *Hansen* case (supra [2])
that notwithstanding the fact that the parties (husband and wife)
were not residing in Denmark at the time the petition for a divorce was
filed or at the time it was granted, nevertheless, the judgment of the
Danish court dissolving the marriage was entitled to full faith and
credit by the courts of the State of New York because Denmark was
the situs of the marital domicile and the parties voluntarily submitted
to the jurisdiction of the Danish court.

The *Oettgen* case is directly in point with the case before us. The
issue before the New York court concerned the validity of a German
divorce decree granted in absentia to aliens who were residing in the
State of New York. The plaintiff wife, a native of Denmark, became
a German national upon her marriage to a national of Germany at
Hamburg on December 22, 1926. They entered the United States
with permanent resident visas on or about December 11, 1928. There-
after, a divorce action was filed in the Supreme Court of Hamburg,
Germany. Both parties were represented by counsel. The testimony
was in the form of affidavits taken at New York City where both
parties were then residing.

The Supreme Court for New York County noted in their decision
that the lack of domicile in Germany is not necessarily a bar to
recognition of a foreign decree by the courts of New York, citing
*Gould* v. *Gould* (*supra*). The court held that the law and public
policy of New York State would not be offended by recognizing the
German decree because it was granted "by a jurisdiction where the
parties were married and of which they remained nationals. It does
not shock the conscience to conclude that people who marry under a
certain set of laws may expect to be bound only so long as that set of
laws required it . . . We are not here dealing with a 'mail order'
divorce granted by a country having no relationship to the parties'
marital status." *Oettgen* v. *Oettgen*, 94 N.Y. Supp. 2d at p. 172.

The United States Court of Appeals for the Second Circuit had
before it the validity for immigration purposes of a divorce obtained by
a Pakistani national residing in New York City from his wife then
residing in Pakistan. The divorce decree was awarded by the Director
of the National Islamic Mission in the United States, one Reverend
Sheikh Faisal, "in accordance with the courts of Islam (and in accord-
ance) with the laws of the Government of the United States of
America."

---

[2] *Hansen* v. *Hansen*, 8 N.Y. Supp. 2d 655, S. Ct., Appellate Div., December 31,
1938; *Weil* v. *Weil*, 26 N.Y. Supp. 2d. 467, Domestic Relations Court, City of
New York, 1941; *Oettgen* v. *Oettgen*, 94 N.Y. Supp. 2d 108, S. Ct. Special Term,
New York County, 1949.

The court in ruling that the divorce would not be recognized as valid in New York State made this comment: "We ... believe that the purported divorce in the case at bar could be valid only when granted in Pakistan." The court in support of this statement cited the New York case relied upon in this decision (see [2]). The court noted that although the parties concerned were physically present in the United States at the time the divorces were granted nevertheless the validity of the decrees were acknowledged for the reason that the marriages had been performed within the jurisdiction of the foreign courts and the parties were still nationals of the country in which the foreign courts were located. (*Shikoh* v. *Murff*, 257 F. 2d 306, C.A. 2, 1958)

We conclude on the basis of the foregoing authority that the Hungarian decree of divorce would be recognized as valid under the laws of the State of New York and as a necessary corollary thereof, that the marriage between the petitioner and the beneficiary in this proceeding will support an application for third preference classification under section 203(a) of the Immigration and Nationality Act (8 U.S.C. 1153(a)). An appropriate order will be entered.

**ORDER:** The order entered by the District Director at New York on December 5, 1962 denying the petitioner's application for third preference classification under section 203(a) of the Immigration and Nationality Act is hereby withdrawn.

*It is further ordered* that the appeal be and the same is hereby sustained; the petition filed in behalf of Rainer E. Koehne is hereby approved for third preference classification pursuant to section 203(a) of the Immigration and Nationality Act (8 U.S.C. 1153(a)).