*70 I. Rosenstiel v. Rosenstiel
Bergan, J.
The defendant wife’s former husband Felix Ernest Kaufman in 1954 obtained a divorce from her in a district court at Juarez in Chihuahua, Mexico. Plaintiff and defendant were married in New York in 1956 and this action by the husband seeks to annul that marriage on the ground the 1954 divorce is invalid and that, therefore, the defendant wife was incompetent in 1956 to contract a marriage.
In seeking the divorce in Mexico Mr. Kaufman went to El Paso, Texas, where he registered at a motel and the next day crossed the international boundary to Juarez. There he signed the Municipal Register, an official book of residents of the city, and filed with the district court a certificate showing such registration and a petition for divorce based on incompatability and ill treatment between the spouses.
After about an hour devoted to these formalities, Mr. Kaufman returned to El Paso. The following day his wife, the present defendant, appeared in the Mexican court by an attorney duly authorized to act for her and filed an answer in which she submitted to the jurisdiction of the court and admitted the allegations of her husband’s complaint. The decree of divorce was made the same day. The judgment is recognized as valid by the Republic of Mexico.
The Divorce Law of the State of Chihuahua provides that the court may exercise jurisdiction either on the basis of residence or of submission. Article 22 provides that the Judge “competent to take cognizance of a contested divorce ” is the Judge “of the place of residence of the plaintiff” and of a divorce “by mutual consent”, the Judge “ of the residence of either of the spouses ”.
For the purposes of article 22, the statute further provides that the residence “ shall be proven ” by the “ certificate of the Municipal Register” of the place (art. 24). Article 23, which has application to Wood v. Wood, provides that judicial competence “ may also be fixed ” by express or tacit submission.
After a trial at Special Term in the present husband’s action for annulment, the court, holding that New York would not recognize the Mexican decree, granted judgment for the plaintiff and annulled the marriage; the Appellate Division reversed this judgment and dismissed the complaint.
*71 In the background of this problem is a long scries of decisions over a period of a quarter of a century in the New York Supreme Court at Appellate Division and at Special Term recognizing the validity of bilateral Mexican divorces which we consider has some relevancy to the question before us.[1] V.No New York decision has refused to recognize such a bilateral Mexican divorce.
It has been estimated that many thousands of persons have been affected in their family and property status by these decisions (cf. Flint, Divorce by Personal Jurisdiction of the Parties — A Support for the Mexican Bi-lateral Divorce, 29 Albany L. Rev. 328, and Report of the Joint Legislative Committee on Matrimonial and Family Laws, N. Y. Legis. Doc., 1957, No. 32; id., N. Y. Legis. Doc., 1961, No. 19). In this respect the problem in New York differs somewhat from that in New Mexico, New Jersey and Ohio which have as a matter of their own public policy refused to accept as valid such Mexican divorces (Golden v. Golden, 41 N. M. 356; Warrender v. Warrender, 42 N. J. 287; Bobala v. Bobala, 68 Ohio App. 63).
There is squarely presented to this court now for the first time the question whether recognition is to be given by New York to a matrimonial judgment of a foreign country based on grounds not accepted in New York, where personal jurisdiction of one party to the marriage has been acquired by physical presence before the foreign court; and jurisdiction of the other has been acquired by appearance and pleading through an authorized attorney although no domicile of either party is shown within that jurisdiction; and “residence” has been acquired by one party through a statutory formality based on brief contact.
*72 In cases where a divorce has been obtained without any personal contact with the jurisdiction by either party or by physical submission to the jurisdiction by one, with no personal service of process within the foreign jurisdiction upon, and no appearance or submission by, the other, decision has been against the validity of the foreign decree (Caldwell v. Caldwell, 298 N. Y. 146 [1948]; Rosenbaum v. Rosenbaum, 309 N. Y. 371 [1955]).
Although the grounds for divorce found acceptable according to Mexican law are inadmissible in New York, and the physical contact with the Mexican jurisdiction was ephemeral, there are some incidents in the Mexican proceedings which are common characteristics of the exercise of judicial power.
The former husband was physically in the jurisdiction, personally before the court, with the usual incidents and the implicit consequences of voluntary submission to foreign sovereignty. Although he had no intention of making his domicile there, he did what the domestic law of the place required he do to establish a “ residence ” of a kind which was set up as a statutory prerequisite to institute an action for divorce. This is not our own view in New York of what a bona fide residence is or should be, but it is that which the local law of Mexico prescribes.
Since he was one party to the two-party contract of marriage he carried with him legal incidents of the marriage itself, considered as an entity, which came before the court when he personally appeared and presented his petition. In a highly mobile era such as ours, it is needful on pragmatic grounds to regard the marriage itself as moving from place to place with either spouse, a concept which underlies the decision in Williams v. North Carolina I (317 U. S. 287; see, especially, Justice Frankfurter’s concurrence p. 304).
The voluntary appearance of the other spouse in the foreign court by attorney would tend to give further support ■ to an acquired jurisdiction there over the marriage as a legal entity. In theory jurisdiction is an imposition of sovereign power over the person. It is usually exerted by symbolic and rarely by actual force, e.g., the summons as a symbol of force; the attachment and the civil arrest, as exerting actual force.
But almost universally jurisdiction is acquired by physical and personal submission to judicial authority and in legal theory there seems to be ground to admit that the Mexican court at *73 Juarez acquired jurisdiction over the former marriage of the defendant.
It is true that in attempting to reconcile the conflict of laws and of State interests in matrimonial judgments entered in States of the United States, where the Constitution compels each to give full faith and credit to the judgments of the others, a considerable emphasis has been placed on domicile as a prerequisite to that compulsory recognition (Williams v. North Carolina I, supra; Michael Cardozo, Divorce Without Domicile, 3-9 Cornell L. Q. 293, 301). But domicile is not intrinsically an indispensable prerequisite to jurisdiction (cf. Stimson, Jurisdiction in Divorce Cases: The Unsoundness of the Domiciliary Theory, 42 Amer. Bar Assn. J. 222 [1956]; Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees — A Comparative Study, 65 Harv. L. Rev. 193, 228).
The duration of domicile in sister States providing by statute for a minimal time to acquire domicile as necessary to matrimonial action jurisdiction is in actual practice complied with by a mere formal gesture having no more relation to the actual situs of the marriage or to true domicile than the formality of signing the Juarez city register. The difference in time is not truly significant of a difference in intent or purpose or in effect.
The State or country of true domicile has the closest real public interest in a marriage but, where a New York spouse goes elsewhere to establish a synthetic domicile to meet technical acceptance of a matrimonial suit, our public interest is not affected differently by a formality of one day than by a formality of six weeks.
Nevada gets no closer to the real public concern with the marriage than Chihuahua. New York itself will take jurisdiction of a matrimonial action without regard to domicile or residence if it happened, by mere fortuity, that the marriage was contracted here, even between people entirely foreign to our jurisdiction (Domestic Relations Law, §170, subd. 2; see, e.g., David-Zieseniss v. Zieseniss, 205 Misc. 836; Becker v. Becker, 58 App. Div. 374).
A leading New York decision on the recognition of a divorce-granted in a foreign nation where we are under no constitutional compulsion to give full faith and credit" is Gould v. Gould (235 N. Y. 14 [1923]) and there the court sustained a-judgment of *74 divorce in France between parties not domiciled in France at a time when the husband, who instituted the French action, was domiciled in New York. Indeed, the New York law was applied by the French court because ‘ ‘ the plaintiff Gould ’ ’ was a resident of New York (p. 21).
The decision is not a clear precedent for the case now at bar; there are differences, e.g., the parties had substantial personal ties with France; the ground for the French divorce was the New York law; and this court laid down a number of precautionary warnings about the scope of its decision and what it was leaving open (pp. 29, 30).
Still the fact is that this court accepted as valid a judgment affecting marital status of a New York domiciliary granted by a court in a foreign nation, without requiring domiciliary status in that nation; and this aspect of the decision does have relevance here since it is not helpful on the question of French jurisdiction that the French court acted on its conception of New York law. It applied New York law for the very reason that Gould was not a domiciliary of France but of New York.
The opinion in Caldwell v. Caldwell (298 N. Y. 146, supra), dealing with divorces obtained on no personal presence or submission by either party in Mexico, the “ mail-order decree”, discusses domicile, but the question was not decisive of that case (cf. dissenting opinion, Conway, J., Matter of Rathscheck, 300 N. Y. 346, 355).
A balanced public policy now requires that recognition of the bilateral Mexican divorce be given rather than withheld and such recognition as a matter of comity offends no public policy of this State.
The order should be affirmed, with costs.
II. Wood v. Wood
Although the Mexican decree of divorce in Wood v. Wood was entered under a provision of the Chihuahua Divorce Law (art. 23) which does not require proof of registration as a resident and which allowed jurisdiction to be taken by submission, the personal appearance in Chihuahua before the court of one party and the appearance through a duly authorized attorney by the other require that for the purposes of New York public policy decision in this case be consistent with that in Rosenstiel.
*75 On the wife’s appeal from an affirmance of the dismissal of her complaint for separation based on cruelty, it is enough to say that if the facts as found and affirmed are accepted it was not error as a matter of law to dismiss the complaint.
The order should be affirmed, with costs, to plaintiff.

. Kantrowitz v. Kantrowitz, 21 A D 2d 654; Matter of Klemas v. Klemas, 20 A D 2d 530; Heine v. Heine, 19 A D 2d 695, affg. 231 N. Y. S. 2d 239; Busk v. Busk, 18 A D 2d 700, affg. as mod. 229 N. Y. S. 2d 904; Sonnenberg v. Sonnenberg, 203 N. Y. S. 2d 118, app. dsmd. 11 A D 2d 1024; Laff v. Laff, 4 A D 2d 874, affg. 5 Misc 2d 554; Weibel v. Weibel, 37 Misc 2d 162; Millman v. Millman, 27 Misc 2d 669; Sholnick v. Sholnick, 24 Misc 2d 1077; Bowen v. Bowen, 22 Misc 2d 496; Fricke v. Bechtold, 8 Misc 2d 844; Mitchell v. Mitchell, 194 Misc. 73; Matter of Fleischer, 192 Misc. 777, Costi v. Costi, 133 N. Y. S. 2d 447; Caswell v. Caswell, 111 N. Y. S. 2d 875; Mountain v. Mountain, 109 N. Y. S. 2d 828; Katz v. Katz, N. Y. L. J., May 8, 1964, p. 16, col. 8; Ocker v. Ocker, N. Y. L. J., April 16, 1964, p. 19, col. 4; Walker v. Walker, N. Y. L. J., Jan. 14, 1964, p. 16, col. 5.