NADINE HARPIGNIES PERRIN

v.

JEAN JACQUES BERNARD PERRIN, Appellant

No. 17,310

United States Court of Appeals

Third Circuit

Argued January 29, 1969

Decided March 17, 1969

BIRCH, MADURO, DEJONGH & FARRELLY, Charlotte Amalie, St. Thomas, Virgin Islands (ALEXANDER A. FARRELLY, ESQ., for counsel), *for appellant*

SIDNEY A. COHEN, ESQ., St. Thomas, Virgin Islands, *for appellee*

Before MARIS, VAN DUSEN and ALDISERT, *Circuit Judges*

OPINION OF THE COURT

MARIS, *Circuit Judge*

This is an appeal by the defendant husband from a judgment of the District Court of the Virgin Islands granting to the plaintiff wife a divorce and the custody of their minor son, Daniel, now 9 years old. The parties, who were married in New York on September 10, 1954, are Swiss citizens. On February 8, 1967 the present plaintiff filed a petition in a court of the State of Chihuahua, Mexico, praying for a divorce from her husband, the present defendant. The plaintiff appeared personally in the Mexican proceeding. The defendant appeared by a duly empowered attorney at law and filed a consenting answer. On February 23, 1967 the Mexican court entered a decree of divorce, dissolving the marriage and awarding custody of the minor child to the defendant.

On November 22, 1967 the plaintiff filed another divorce petition in the tribunal of the district of Lausanne, in the Canton of Vaud, Switzerland. That suit was subsequently dismissed by reason of the absence of the plaintiff.

In the latter part of November, 1967, the defendant arrived in St. Thomas from Martinique on the motor vessel Jolly Rover to engage in the charter business for the tourist season. The defendant had just returned from Switzerland where the minor child had been living with the defendant's parents and he brought the minor child

23

to St. Thomas with him. On December 8, 1967 the defendant was served with a writ of ne exeat issued on that day pursuant to an order of the District Court of the Virgin Islands in a suit for custody of the minor child brought in that court at Civil No. 381-1967, Division of St. Thomas and St. John, by the plaintiff who was then en route to St. Thomas from Switzerland. No further action has been taken by the District Court in that suit and on January 29, 1968 the plaintiff filed in that court a complaint, her fourth,[1] against the defendant at Civil No. 27-1968, Division of St. Thomas and St. John, praying for an absolute divorce and again seeking the custody of the minor child. A motion to dismiss this complaint for lack of jurisdiction of the subject matter and persons of the plaintiff and minor child was filed by the defendant and on March 7, 1968 was denied without prejudice by the court which ordered that the defendant pay the plaintiff $100.00 per month for the support of the child, that the child be not removed from the jurisdiction and that his custody be awarded to the plaintiff, all *pendente lite*. Thereafter a trial was held by the District Court which on April 24, 1968 filed its findings of fact, conclusions of law and a decree granting the plaintiff an absolute divorce, the custody of the minor child and support for the child of $100.00 per month. This appeal by the defendant followed.

The defendant's motion to dismiss the complaint was based, inter alia, upon the proposition that the court lacked jurisdiction of the subject matter because there was no existing marriage between the parties to dissolve, the marriage having been terminated a year previously by the Mexican divorce decree, an authenticated copy of which was annexed to the motion. In her brief opposing the motion the plaintiff attacked the validity of the Mexican di-

---

[1] It was stated at bar that she had previously filed a divorce suit in Martinique.

24

vorce decree on the ground that neither party was domiciled in Mexico at the time it was rendered and that the Mexican court, therefore, lacked jurisdiction to render it. Thus was raised the question of the validity of the Mexican decree or, more precisely, the question whether the plaintiff can be heard to attack in this proceeding the validity of the Mexican decree which she herself had sought and obtained and in the entry of which the defendant had acquiesced.

It appeared from the papers annexed to the motion that on or about February 8, 1968 the plaintiff was personally in the City of Juarez, in the State of Chihuahua, Mexico, where she signed the municipal registry of residents of the city, appeared personally in the Third Civil Court of the District of Bravos, State of Chihuahua, filed her complaint against the defendant for a divorce and submitted herself to the jurisdiction of the court, exhibiting a certificate of her inscription in the municipal registry of residents. The defendant appeared by an attorney who exhibited a written power of attorney and filed an answer on behalf of the defendant submitting to the jurisdiction, confessing the complaint and joining in its prayer for a divorce. Upon this state of the record and after receiving testimonial evidence the Mexican court entered the decree in question which granted the divorce and awarded custody of the minor child to the defendant.

It is true, as the plaintiff now argues, that domicile is regarded as the basis for jurisdiction to grant a divorce in the United States. Granville-Smith v. Granville-Smith, 1955, 349 U.S. 1 [3 V.I. 701]. It is likewise true that a divorce decree may be collaterally attacked for lack of domiciliary jurisdiction, Williams v. North Carolina, 1945, 325 U.S. 226, 157 A.L.R. 1366, if the defendant was not personally served and did not appear. But it is equally well settled that if the defendant was personally served

or did actually appear in the action he is estopped from impeaching the resulting divorce decree, whether the domiciliary jurisdiction was contested by the defendant, Sherrer v. Sherrer, 1948 334 U.S. 343, 1 A.L.R.2d 1355, or was admitted by him, Coe v. Coe, 1948, 334 U.S. 378, 1 A.L.R. 2d 1376.

The Sherrer and Coe cases involved divorce decrees which had been entered in Florida and Nevada, respectively, and involved the application thereto of the full faith and credit clause of the federal Constitution. Here, however, we are dealing with a decree of a foreign state as to which the principles of comity, rather than full faith and credit, apply. Ordinarily, the recognition in the United States of such a foreign decree will depend upon whether at least one of the spouses was domiciled in the foreign state when the decree of divorce was rendered. Certainly "mail order" divorce decrees in which neither spouse has appeared personally in the foreign jurisdiction are not recognized here. And this appears to be equally true in the case of ex parte divorce decrees in which an absent defendant is served only extraterritorially or constructively and does not actually appear or file an answer in the action.

In the Mexican proceeding involved in the present case, however, as in the Coe case, a bilateral divorce is involved. For here, as there, the plaintiff was personally present in the foreign state and appeared in the foreign court and the defendant appeared in that court by counsel and filed a consenting answer. In Rosenstiel v. Rosenstiel, 1965, 16 N.Y.2d 64, 209 N.E.2d 709, 13 A.L.R.3d 1401, cert. den. 384 U.S. 971, the Court of Appeals of New York was presented with the question whether such a bilateral divorce granted in the State of Chihuahua, Mexico, was entitled to recognition in New York State. In speaking for

the Court of Appeals in that case Judge Bergan said, inter alia:

"There is squarely presented to this court now for the first time the question whether recognition is to be given by New York to a matrimonial judgment of a foreign country based on grounds not accepted in New York, where personal jurisdiction of one party to the marriage has been acquired by physical presence before the foreign court; and jurisdiction of the other has been acquired by appearance and pleading through an authorized attorney although no domicile of either party is shown within that jurisdiction; and 'residence' has been acquired by one party through a statutory formality based on brief contact.

"In cases where a divorce has been obtained without any personal contact with the jurisdiction by either party or by physical submission to the jurisdiction by one, with no personal service of process within the foreign jurisdiction upon, and no appearance or submission by, the other, decision has been against the validity of the foreign decree (Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E.2d 60 (1948); Rosenbaum v. Rosenbaum, 309 N.Y. 371, 130 N.E.2d 902, 54 A.L.R.2d 1232 (1955)).

"Although the grounds for divorce found acceptable according to Mexican law are inadmissible in New York, and the physical contact with the Mexican jurisdiction was ephemeral, there are some incidents in the Mexican proceedings which are common characteristics of the exercise of judicial power.

"The former husband was physically in the jurisdiction, personally before the court, with the usual incidents and the implicit consequences of voluntary submission to foreign sovereignty. Although he had no intention of making his domicile there, he did what the domestic law of the place required he do to establish a 'residence' of a kind which was set up as a statutory prerequisite to institute an action for divorce. This is not our own view in New York of what a bona fide residence is or should be, but it is that which the local law of Mexico prescribes.

"Since he was one party to the two-party contract of marriage he carried with him legal incidents of the marriage itself, considered as an entity, which came before the court when he personally appeared and presented his petition. In a highly mobile era such as ours, it is needful on pragmatic grounds to regard the marriage itself as moving from place to place with either spouse,

27

a concept which underlies the decision in Williams v. State of North Carolina I, 317 U.S. 287, p. 304, 63 S.Ct. 207, 87 L.Ed. 279, p. 289, 143 A.L.R. 1273; see, especially, Justice Frankfurter's concurrence.

"The voluntary appearance of the other spouse in the foreign court by attorney would tend to give further support to an acquired jurisdiction there over the marriage as a legal entity. In theory jurisdiction is an imposition of sovereign power over the person. It is usually exerted by symbolic and rarely by actual force, e.g., the summons as a symbol of force; the attachment and the civil arrest, as exerting actual force.

"But almost universally jurisdiction is acquired by physical and personal submission to judicial authority and in legal theory there seems to be ground to admit that the Mexican court at Juarez acquired jurisdiction over the former marriage of the defendant.

"It is true that in attempting to reconcile the conflict of laws and of State interests in matrimonial judgments entered in States of the United States, where the Constitution compels each to give full faith and credit to the judgments of the others, a considerable emphasis has been placed on domicile as a prerequisite to that compulsory recognition (Williams v. State of North Carolina I, supra; Michael Cardozo, Divorce Without Domicile, 39 Cornell LQ 293, 301). But domicile is not intrinsically an indispensable prerequisite to jurisdiction (cf. Stimson, Jurisdiction in Divorce Cases: The Unsoundness of the Domiciliary Theory, 42 Amer. Bar Assn. J. 222 (1956); Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees—A Comparative Study, 65 Harv. L. Rev. 193, 228).

"The duration of domicile in sister States providing by statute for a minimal time to acquire domicile as necessary to matrimonial action jurisdiction is in actual practice complied with by a mere formal gesture having no more relation to the actual situs of the marriage or to true domicile than the formality of signing the Juarez city register. The difference in time is not truly significant of a difference in intent or purpose or in effect.

"The State or country of the true domicile has the closest real public interest in a marriage but, where a New York spouse goes elsewhere to establish a synthetic domicile to meet technical acceptance of a matrimonial suit, our public interest is not affected differently by a formality of one day than by a formality of six weeks.

28

"Nevada gets no closer to the real public concern with the marriage than Chihuahua. . . ."

█ █ With these views we agree and we think that the case is ruled in principle by the Coe case. We find it impossible to believe that six weeks residence by Mr. Coe gave Nevada a greater or more real concern with his marriage than a day or two's residence in Chihuahua by Mrs. Perrin gave to that Mexican State. Although we recognize that there is a divergence of view on this question among American jurisdiction,[2] we hold, as did the Court of Appeals of New York in that case, that "A balanced public policy now requires that recognition of the bilateral Mexican divorce be given rather than withheld and such recogition as a matter of comity offends no public policy" of this Territory. We are the more persuaded to this result in this case because the party who seeks to attack the Mexican decree is not the defendant in that case but rather the plaintiff who procured it upon her representation to the Mexican court that she resided in the City of Juarez. It follows that the plaintiff may not in this proceeding be heard to deny the validity of the Mexican divorce decree. Since by the terms of that decree her marriage with the defendant was dissolved on February 23, 1967 no marriage status remained to be terminated when the present complaint was filed and the latter should have been dismissed.

█ The decree on appeal also awarded custody of the minor child to the plaintiff and this portion of the decree remains to be considered. Under 16 V.I.C. § 109 the jurisdiction of the District Court to award custody of the children of a marriage arises only when the court dissolves the marriage or declares it void. The portion of the decree appealed from which awarded custody of the minor child to the plaintiff accordingly falls with the reversal of the

---

[2] See note to the Rosenstiel case, 13 A.L.R.2d 1401, 1433 et seq.

divorce decree. We think that the matter of his custody should be presented to the Municipal Court, which is expressly given jurisdiction of this subject by 4 V.I.C. § 172(3). To expedite this procedure the District Court has power to transfer to the Municipal Court under 4 V.I.C. § 32(b) the pending action for custody at its No. 381-1967, Division of St. Thomas and St. John.

The decree of the District Court will be reversed and the cause remanded with directions to dismiss the complaint.