## MATTER OF ASSAN

### In Visa Petition Proceedings

### A-20121202

*Decided by Board March 21, 1975*

Where the beneficiary of a petition under section 201(b) of the Immigration and Nationality Act and his former spouse were apparently both natives and citizens of Ecuador, the fact that neither the beneficiary nor his former Ecuadorian spouse appeared personally at their divorce proceedings in Ecuador does not preclude it from being recognized as valid in New York, the place of beneficiary's subsequent marriage to petitioner. The record is remanded to the District Director in order that the petitioner may have the opportunity to establish the validity of the Ecuadorian divorce.

ON BEHALF OF PETITIONER: Bertrand D. Gerber, Esquire
119 West 57th Street
New York, New York 10019

The petitioner applied for immediate relative classification for the beneficiary under section 201(b) of the Immigration and Nationality Act. In a decision dated January 23, 1974, the district director denied the petition. The petitioner has appealed from that decision. The appeal will be sustained, and the record will be remanded to the district director.

The beneficiary, a native and citizen of Ecuador, was married previously in Ecuador, evidently to another native and citizen of that country. The beneficiary allegedly was divorced from his first wife in Ecuador in 1972. The translation of that divorce decree contained in the record indicates that neither the beneficiary nor his first wife appeared personally in the Ecuadorian action.

The district director found that the beneficiary's Ecuadorian divorce was not based on domicile. He concluded that under *Williams* v. *North Carolina*, 325 U.S. 226 (1945), a foreign divorce decree not based on domicile would not be recognized in New York, the place of celebration of the beneficiary's subsequent marriage to the petitioner. We disagree with the district director's reasoning.

*Williams* v. *North Carolina*, supra, dealt with the full faith and credit clause of the United States Constitution. Since the Constitution does not apply to judgments rendered by courts of foreign countries, the question of recognition is solely one of comity. New York courts will

218

recognize divorce decrees rendered in foreign countries when such recognition does not offend any public policy of New York. *Rosenstiel v. Rosenstiel,* 16 N.Y.2d 64, 209 N.E.2d 709, 262 N.Y.S.2d 86 (1965), cert. denied, 384 U.S. 971 (1966); *Rosenbaum v. Rosenbaum,* 309 N.Y. 371, 130 N.E.2d 902 (1955); *Matter of Moncayo,* 14 I. & N. Dec. 472 (BIA 1973).

In *Rosenstiel v. Rosenstiel,* supra, the court was faced with a situation involving a Mexican divorce obtained by parties who were not domiciled in Mexico at the time of the divorce. The court held that where one party was physically present within the jurisdiction of the Mexician court, and the other party appeared by attorney and submitted to the jurisdiction of the Mexican court, the Mexican divorce decree was entitled to recognition in New York. See also *Ramm v. Ramm,* 34 App. Div. 2d 667, 310 N.Y.S.2d 111 (1970), aff'd, 28 N.Y.2d 892, 271 N.E.2d 558, 322 N.Y.S.2d 726 (1971).

A Dominican Republic divorce decree allegedly dissolving the marriage of two Dominican citizens who were married in the Dominican consulate in New York was at issue in *De Pena v. De Pena,* 31 App. Div. 2d 415, 298 N.Y.S.2d 188 (1969). Neither party appeared in person in the Dominican action, and process was not personally served on the wife. The court refused to recognize the divorce. In doing so, it pointed out that the wife was a domiciliary of New York, and the husband's only existing contact with the Dominican Republic was his continued Dominican citizenship. The court distinguished *Rosenstiel* on the ground that in *De Pena* there was no physical presence by either party and the Dominican court had not acquired jurisdiction over the wife.

In *Matter of Moncayo,* supra, we had occasion to interpret the policy statements made by the New York courts in *Rosenstiel* and *De Pena.* We held that New York would not recognize an Ecuadorian divorce obtained by an Ecuadorian citizen residing in the United States, where neither party appeared in person before the Ecuadorian court and the beneficiary's first wife was not personally served and did not submit to the jurisdiction of the Ecuadorian court. See also *Matter of Pearson,* 13 I. & N. Dec. 152 (BIA 1969).

The foregoing cases indicate that where jurisdiction of the foreign court is not based on domicile, New York policy generally requires some physical presence on the part of at least one party within the jurisdiction rendering the divorce, combined with some type of appearance or submission to jurisdiction by the other party. In the past we have concluded that there are certain circumstances in which New York would recognize a foreign divorce even where neither party was physically present within the jurisdiction of the foreign court granting the divorce. Such recognition has been extended where the parties involved were nationals of the foreign country rendering the divorce, were married in

219

that country, lived in that country as husband and wife, consented to the jurisdiction of the foreign court, and appeared in the foreign action through their authorized representatives. *Matter of Koehne,* 10 I. & N. Dec. 264 (BIA 1963); cf. *Matter of Ma,* 15 I. & N. Dec. 70 (BIA 1974); *Matter of Kurtin,* 12 I. & N. Dec. 284 (BIA 1967).

The record indicates that the beneficiary's first wife may have been domiciled in Ecuador at the time of the divorce. It also indicates that the first wife may have been personally served with the complaint in the Ecuadorian action.[1] If the preceding facts are true, we believe that any policy objections to the recognition of the divorce based on the parties' failure to appear personally before the Ecuadorian court would be overcome.

The burden of establishing the validity of the Ecuadorian divorce is upon the petitioner. See *Matter of Brantigan,* 11 I. & N. Dec. 493 (BIA 1966). Nevertheless, since there was confusion concerning the law to be applied in this case, we shall remand the record to give the petitioner an opportunity to establish the facts surrounding the Ecuadorian divorce. The district director should then enter a new decision.

**ORDER:** The appeal is sustained, and the record is remanded to the district director for further proceedings in accordance with the above opinion.

---

[1] On appeal, counsel claimed that the wife personally appeared in the Ecuadorian action and offered to submit proof of such appearance. However, no such proof has been received.