418 A.2d 490

**Marvin A. ROSEN, Appellant,**

v.

**Gloria Lipschitz SITNER, a/k/a Gloria Rosen.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed Jan. 18, 1980.

Petition for Allowance of Appeal Denied Sept. 9, 1980.

446

Robert F. Ruehl, Doylestown, for appellant.

David Weinstein, Philadelphia, for appellee.

Before VAN der VOORT, HESTER and WIEAND, JJ.*

WIEAND, Judge:

In this appeal by Marvin A. Rosen from an order which dismissed his complaint seeking to annul a marriage to Gloria Sitner, a/k/a Gloria Rosen, we are asked to determine the validity of a prior divorce decree procured by his wife in Mexico. The lower court, after taking extensive testimony from the parties and Mexican officials, decided that the Mexican divorce was valid and that consequently the later marriage contracted by appellant and appellee was also valid.

* Judge DONALD E. WIEAND is sitting by special designation.

From depositions and evidence at trial, the facts appear as follows: Gloria Lipschitz and Arthur Sitner, both domiciliaries of New York, were married in New York in 1950. Seven years later, a separation occurred and Mrs. Sitner, together with her two daughters, moved into the home of her parents, who also lived in New York. In July, 1963, she travelled to Juarez, Mexico, where she procured a divorce from Arthur Sitner. Although not present in Juarez, Sitner entered an appearance pursuant to power of attorney, submitted to the court's jurisdiction, and did not contest the divorce. Mrs. Sitner remained in Mexico for approximately one month, after which she returned to the home of her parents. Several months later, appellee began dating Marvin Rosen, a resident of New Jersey. The two were married in New Jersey on January 28, 1970. Mrs. Rosen continued to reside in New York but travelled to New Jersey on weekends to be with her husband. Six months later they moved their residence to Bucks County, Pennsylvania. There they lived together until July 8, 1977, when appellant left the common home. Appellant's complaint seeking an annulment was filed on January 30, 1978, and dismissed on June 9, 1978.

Appellant's annulment action was based on the contention that appellee's prior marriage to Arthur Sitner had not been validly terminated by the Mexican divorce decree. Inasmuch as neither appellee nor Mr. Sitner had been domiciliaries of Mexico at the time of the divorce action, he contended, the Mexican Court lacked jurisdiction.

The lower court, in an able opinion, concluded that the laws of New York applied to determine the validity of the Mexican decree because both appellee and Sitner had been domiciliaries of New York at all times pertinent to the divorce proceedings. We agree. At the time when the Sitners obtained their divorce in Mexico, only the State of New York had an interest in their marriage. Its contacts with the parties exceeded those of any other jurisdiction, and its law, therefore, must be held controlling. The marital status of the parties was of great social significance, which should not be permitted to vary from state to state.

The courts of Pennsylvania, therefore, will apply New York law in determining the validity of the Mexican decree. Accord, *Commonwealth ex rel. Ingram v. Ingram*, 82 York 74 (1968).

■ The landmark decision in New York is that rendered by the Court of Appeals of New York in *Rosenstiel v. Rosenstiel*, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965), cert. denied 383 U.S. 943, 86 S.Ct. 1197, 16 L.Ed.2d 206 (1966). In that case, the husband, a New York domiciliary, had travelled to Juarez, Mexico, to procure a divorce. The wife appeared through an attorney and submitted to the court's jurisdiction. Subsequently, the wife remarried; her second husband, after several years of marriage, sought an annulment, alleging invalidity of his wife's Mexican divorce decree. The Court recognized that when dealing with decrees from foreign countries, as opposed to decrees from other states, validity must be determined by rules of comity and not according to the full faith and credit clause of the United States Constitution. It held that since both parties had voluntarily appeared in Mexico and the minimal residency requirements had been met, "a balanced public policy now requires that recognition of the bilateral Mexican divorce be given rather than withheld, and such recognition as a matter of comity offends no public policy of [New York]." *Rosenstiel v. Rosenstiel*, supra at 74, 262 N.Y.S.2d at 91, 209 N.E.2d at 713. Thus, New York law has upheld the validity of bilateral decrees rendered by a foreign country in cases where one spouse appears personally and the other spouse submits to the jurisdiction of the court by entering an appearance, provided only that the residency requirements of the forum have been satisfied.

■ In the instant case, the lower court held that even though the validity of the Mexican divorce had not been adjudicated in New York, the courts of Pennsylvania would apply New York law in the interest of "reasonable expectations and stability in judicial determinations." We agree with the lower court when it said: "To require the litigants to go through the formality of obtaining an adjudication of

status in New York in order to give extraterritorial validity to the *Rosenstiel* decision would exalt form over substance and such has never been the public policy of the Commonwealth of Pennsylvania." Lower court opinion at p. 8.

We are of the opinion that the lower court correctly determined that the Mexican decree should be treated as a valid decree. We are also of the opinion that appellant is now estopped from challenging the validity of the Mexican decree. Having taken advantage of the divorce in order to marry appellee and having cohabited for seven years, appellant will not now be heard to assert that the decree was invalid.

In Restatement, Conflict of Laws, § 112, the law pertaining to estoppel was set forth as follows:

"The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying."

See also: 24 Am.Jur.2d Divorce and Separation §§ 971, 972; 27B C.J.S. Divorce, §§ 364-366.

Most jurisdictions are in accord. See: *Sears v. Sears*, 293 F.2d 884 (D.C.Cir.1961); *Chilcott v. Chilcott*, 257 Cal.App.2d 868, 65 Cal.Rptr. 263 (1968); *Joyner v. Joyner*, 227 Ga. 545, 181 S.E.2d 842 (1971); *Varap v. Varap*, 76 Ill.App.2d 402, 222 N.E.2d 77 (1966); *Perrenoud v. Perrenoud*, 206 Kan. 559, 480 P.2d 749 (1971); *Suski v. Suski*, 34 Mich.App. 694, 192 N.W.2d 65 (1971); *Moody v. Moody*, 465 S.W.2d 836 (Tex. Civ.App.1971), cert. denied 405 U.S. 990, 92 S.Ct. 1255, 31 L.Ed.2d 457 (1972). See also Anno., Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties, 13 A.L.R.3d 1419, 1452, and cases cited therein.

Pennsylvania decisions have recognized the applicability of equitable principles of estoppel where a party to the foreign decree attempts to challenge it. *In re Romanski*

*Estate,* 354 Pa. 261, 47 A.2d 233 (1946); *Sargent v. Sargent,* 225 Pa.Super. 1, 307 A.2d 353 (1973); *Commonwealth ex rel. Bortin v. Bortin,* 210 Pa.Super. 355, 234 A.2d 55 (1967) (citing Rest. § 112); *Commonwealth ex rel. Wenz v. Wenz,* 195 Pa.Super. 593, 171 A.2d 529 (1961); *DeRosay v. DeRosay,* 162 Pa.Super. 333, 57 A.2d 685 (1948); *Commonwealth ex rel. Allison v. Allison,* 151 Pa.Super. 369, 30 A.2d 365 (1943).

For some time, the courts were reluctant to hold that a third party could be estopped from challenging a foreign decree in divorce. This situation is now covered, albeit generally, by Restatement (2d) Conflict of Laws, § 74, which provides: "a person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so."

Few cases have dealt specifically with estoppel in cases of third party attacks on foreign divorce decrees. Those decisions which have held third persons estopped have relied upon the particular facts and circumstances involved rather than on a settled rule or a definitive policy. See, e. g., *In re Vinson's Estate,* 212 Cal.App.2d 543, 28 Cal.Rptr. 94 (1963); *Dietrich v. Dietrich,* 41 Cal.2d 497, 261 P.2d 269 (1953), cert. denied 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954); *Murphy v. Murphy,* 34 Conn.Sup. 251, 386 A.2d 274 (1978); *Merino v. Merino,* 56 Misc.2d 854, 290 N.Y.S.2d 462 (1968). See also: *Weber v. Weber,* 200 Neb. 659, 265 N.W.2d 436 (1978). In determining whether estoppel is applicable, factors considered have included the parties, the effect of the decision on other individuals, the nature of the rights sought to be vindicated, public policy, and prior judicial declarations. *Sears v. Sears,* 293 F.2d 884 (D.C.Cir.1961).

In determining whether it would be inequitable to allow an attack on the foreign decree in this case, the following facts appear. At the time of the marriage, both Marvin Rosen and Gloria Rosen knew that the other had previously been divorced. They had discussed their divorces, and appellant knew specifically that his wife's divorce had been procured in Mexico. In fact, when the couple applied for a

452

marriage license in New Jersey, copies of their final divorce decrees had been displayed. In marrying, they accepted each other as unmarried persons, fully competent to enter a contract of marriage. At no time prior to separation did appellant question the validity of appellee's divorce. He cohabited with appellee for seven years, and at all times held her out to be his wife. Not until appellee had instituted an action for support did appellant raise for the first time the issue of the alleged invalidity of the decree terminating appellee's prior marriage. Under these circumstances, we conclude that it would have been inequitable to have permitted appellant to assert invalidity of the divorce in an attempt to escape the obligations of his marriage. See: *Zirkalos v. Zirkalos,* 326 Mich. 420, 40 N.W.2d 313 (1949).

For the foregoing reasons, the order dismissing appellant's complaint for annulment will be affirmed.

Order affirmed.