DUFRESNE, Judge.
This is a suit to determine the rightful heirs to the estate of Charles S. Cohen, decedent. The litigants are:
*1061 1. Jean and Simon Cohen, children of the decedent from his first marriage to Celia Benhaydon, from whom he was divorced in 1951.
2. Miriam Stevens, second wife of decedent, to whom he was married in 1954, and from whom he was divorced in 1958, in Mexico.
3. Jeannette Schmitt Cohen, third wife of decedent to whom he was married in 1960, and who is the administra-trix of the estate. Two children were born of this marriage, namely Nancy and Suzanne Cohen.
After trial on the merits, the court determined that the 1958 Mexican divorce between Miriam and Charles was invalid, and therefore that Miriam was still Charles’ legal spouse at the. time of his death. He also determined that Jeannette was Charles’ good faith putative spouse, but that Charles was in bad faith in contracting this marriage. Applying La.Civ.Code arts. 118 and 1705, he ruled that a 1956 will made by Charles, in which he left almost his entire estate to Miriam, was revoked by the subsequent birth of Nancy and Suzanne during the putative marriage to Jeannette. Finally, following the rule of Succession of Fields, 222 La. 310, 62 So.2d 495 (1952), he awarded one-half of the entire community to Miriam, and the other half to Jeannette. Jeannette now appeals.
Because we find 1) that the trial court erred in applying Louisiana law in determining the validity of the Mexican divorce; 2) that the proper law to be applied was rather that of New York; and 3) that under New York law the Mexican divorce was valid, we reverse that portion of the judgment holding the divorce invalid. Consequently, the 1960 marriage to Jeannette was valid, and the rule of Succession of Fields, supra, has no application here. We do affirm, however, that portion of the judgment holding that the 1956 will was revoked by the birth of Nancy and Suzanne Cohen, pursuant to La.Civ.Code art. 1705.
The pertinent facts concerning the Mexican divorce are these. Charles Cohen was a French Moroccan national who became a naturalized U.S. citizen in 1953. His certificate of naturalization recites a New York City address. At about this time he met Miriam Stevens in New York and marriage plans were made. In April, 1954, Miriam traveled to Morocco, and the couple were wed in Tangier by a judge of the Hebraic Court. They continued to reside together in Morocco until 1956, when Miriam returned to New York because of certain business reversals suffered by her husband.
Miriam testified that during this period Charles was involved in smuggling currency out of Morocco. It appears that one of his money couriers faked an automobile accident, burned the car and abscounded with a substantial amount of cash. The owners of this money attempted to recover it from Charles and Miriam, and made bodily threats against her. Although Miriam stated that she would have remained in Morocco in spite of this problem, she was nonetheless persuaded by her husband to return to New York in October, 1956. She further testified that a plan was developed whereby Miriam would go to Mexico to obtain a divorce in order to protect her from his creditors.
In January, 1957, Charles came to New York and entered into a separation agreement with Miriam. Recited therein is that the parties were living separate and apart, and that the agreement was intended to settle all property and support obligation existing between them as a consequence of their marriage and separation. It further specified that Charles would pay the expenses of any divorce action commenced by Miriam.
Charles went back to Morocco shortly after this agreement was signed, but again returned to New York in December of 1958. During this visit, arrangements were made for the Mexican divorce, and on December 15, Miriam went to Juarez, appeared in court and obtained the divorce. She then returned to New York, and Charles returned to Morocco. In December, 1959, Miriam traveled to Morocco and lived there with Charles until November 1, *1062 1960, when she returned to New York. Except for a brief meeting in 1970, Miriam never saw Charles again. She did, however, frequently speak to him by phone from 1970 until his death in 1977.
It was Miriam’s further testimony that neither she nor Charles ever considered the Mexican divorce as valid. Nonetheless, some three weeks after Miriam left Morocco in 1960, to return to New York, Charles married Jeannette Schmitt on November 23, 1960, in Tangier in a civil ceremony. That act of marriage recites that Charles was divorced from Miriam on December 15, 1958, in Mexico, and identifies the Mexican divorce decree by proper number. Charles and Jeannette lived for several years abroad and then in 1965, moved permanently to Jefferson Parish.
Upon the death of Charles in 1977, his succession was opened and Jeannette was appointed administratrix. Miriam intervened seeking to have the 1956 will probated, and to be recognized as the surviving spouse.
There is no question that at the time of the Mexican divorce, neither Charles nor Miriam were citizens or domiciliaries of Louisiana. It is equally evident that Miriam was then domiciled in New York. She returned there from Morocco in 1956, and except for her visit to Morocco during 1959 and 1960, she lived and worked in New York until 1970, when she moved to California. As will appear more fully below, the Mexican divorce obtained by Miriam would be valid in New York.
The question before us is, therefore, whether the Mexican divorce obtained in Mexico by a New York domiciliary, which would be valid in that state, should be recognized as valid in this Louisiana succession proceding to determine the marital status of the parties, and their consequent rights in the decedent’s estate. As far as we and the litigants can determine, this issue is res nova.
Counsel for Miriam Stevens urges that because the entire property of the succession is in Louisiana and all of the litigants are either residents of the state or have submitted to the jurisdiction of the Louisiana courts, Louisiana is the only state which has an interest in this litigation. He contends that Louisiana law in regard to the Mexican divorce should therefore apply. Counsel for Jeannette Cohen argues to the contrary that New York law is applicable here.
We recognize that our courts have adopted an interest analysis approach in resolving conflict of law problems, Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973). However, we find no support for the proposition that an interest analysis requires use of Louisiana law to determine the marital status of parties who at the time of their divorce were not residents or domiciliaries of this state. Moreover, under the full faith and credit clause of the U.S. Constitution, art. 4, § 1, our courts are bound to give effect to divorce judgments rendered by sister states, even when such states have jurisdiction over only one of the parties, Lewis v. Lewis, 404 So.2d 1230 (La.1981).
We further note that our courts may, in a collateral action, inquire into the jurisdiction founded on domicile of a sister state court over at least one of the parties to a marriage to determine whether full faith and credit will be accorded a non-Louisiana divorce, Lewis v. Lewis, supra; Andries v. Andries, 398 So.2d 123 (La.App. 3rd Cir.1981). However, the above inquiry into the jurisdiction of the rendering court cannot be made if the law of the rendering forum would prohibit such an inquiry, Andrews v. Racca, 399 So.2d 800 (La.App. 3rd Cir., 1981.)
Although none of these rules resolve the precise issue before us, they do establish the principle that when Louisiana domiciliaries who have been divorced elsewhere, appear in our courts, we look to the law of the rendering state to determine the valadity of the divorce, even though that state no longer has any interest in their former citizens. Aside from the requirements of the full faith and credit clause, the obvious policy underlying this principle *1063 is to prevent divorced persons moving into this state from having to re-litigate their status in our courts, or risk having subsequent marriages and the legitimacy of children from such marriages called into question under Louisiana law.
In the matter before us, we of course have no divorce decree from a sister state. We rather have a foreign country divorce rendered to a sister state’s domiciliary. Under New York law, the Mexican divorce would be valid, Rosenstiel v. Rosenstiel, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965). Louisiana law, on the other hand, would consider that divorce an absolute nullity if granted to Louisiana domiciliaries, Super v. Burke, 367 So.2d 93 (La.App. 4th Cir.1979); Everett v. Everett, 345 So.2d 586 (La.App. 4th Cir.1977). Although the trial court concluded that Louisiana substantive law should apply because of its interest in the parties and property, it is this court’s considered opinion that New York law is proper here. While we recognize the strong policy in our state against recognition of foreign “quickie divorces”, we also note the equally strong policy against declaring divorces invalid, especially where to do so would cast over innocent parties and their children the clouds of bigamy and illigitimacy, Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952). On the facts before us, we are called upon to uphold one policy, while apparently rejecting the other. However, we find that the facts and law counsel use of New York, rather than Louisiana law. At the time of the divorce, Miriam was a domiciliary of New York and she entered into a New York separation agreement which was incorporated into the Mexican divorce decree. She herself obtained the divorce which would have been recognized in New York had its validity been contested there, and such a New York judgment upholding that divorce would have been accorded full faith, and credit in this state. Moreover, neither Miriam nor Charles were domiciliaries of Louisiana at the time of that divorce. We thus conclude that our policy against “quickie foreign” divorces between our citizens, should yield here to our policy of upholding marriages and the legitimacy of the children of such marriages.
It is further argued here by Miriam Stevens that even were New York law applied, the divorce would be invalid. The basis of this argument is that the power of attorney by which Charles authorized a Mexican attorney to represent him in the matter does not appear in the record. This argument is unfounded. Under New York law, where one party appears personally in Mexico and the other appears through a duly authorized attorney, that divorce is valid in New York, Rosenstiel v. Rosen-stiel, supra. Further, as an evidentiary matter, the divorce decree recites that a duly appointed attorney appeared for Charles and that the power of attorney was filed in the record. Absent strong proof that this recitation is erroneous, of which there is none in the record, we must presume that a duly executed power of attorney was submitted to the Mexican court, Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952).
We finally note that New York law precludes a party to a Mexican divorce from collaterally attacking such a judgment except on grounds of fraud in its procurement, Greschler v. Greschler, 51 N.Y.2d 368, 434 N.Y.S.2d 194, 414 N.E.2d 694 (1980). As noted above, the allegation of fraud in the procurement of the divorce is that the power of attorney was either non-existent or not properly executed, and that the Mexican court therefore lacked jurisdiction over Charles. Having determined that there was no evidence in the record to overcome the presumption that the judgment was correct in reciting that the power of attorney was proper and presented to the court, we hold that Miriam is precluded from collaterally attacking that divorce decree.
For the foregoing reasons, that portion of the judgment holding the Mexican divorce invalid is reversed; that portion of the judgment setting aside the 1956 will is affirmed; and the case is remanded for *1064 further proceedings consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.