## BATES, TRUSTEE, *v.* FIRESTONE.

*Corporations—Action to recover upon stock subscription—*
  *Pleading compliance with Blue Sky Law unnecessary—*
  *Preponderance of evidence sufficient to prove subscription*
  *obtained by fraud—Stockholder cannot withdraw stock*
  *subscription, when.*

1. In an action to recover upon a stock subscription it is not
   necessary to allege in the petition that the corporation
   has complied with Sections 6373-1 to 6373-24, General
   Code, commonly known as the Blue Sky Law.
2. When a stock subscriber claims that his subscription was
   obtained by fraud, the burden is upon him to prove the
   fraud by a preponderance of the evidence.
3. A stock subscription given by a stockholder to a corpora-
   tion, pursuant to a resolution of its board of directors in-
   creasing the number of its issued shares of capital stock,
   cannot be withdrawn.

(Decided May 9, 1923.)

ERROR: Court of Appeals for Medina county.

*Mr. W. E. Young* and *Mr. Arthur Van Epp,* for
plaintiff in error.

*Messrs. Webber, Turner, Abt & Gnau* and *Mr.
Frank Spellman,* for defendant in error.

PARDEE, J. The parties stand in this court as
they did in the court below, and will be referred to
as plaintiff and defendant.

The plaintiff is the duly elected, qualified and
acting trustee in bankruptcy of the property and
assets of the Portage Rubber Company, a corpora-

[1] Corporations, 14 C. J. § 1011 (Anno.); 14a C. J.
§ 2958; [2] Corporations, 14 C. J. §§ 1029, 1031; [3] Id., § 892.

tion organized and existing under the laws of the state of Ohio, with its principal place of business in Barberton, in that state, and he was appointed such trustee by the United States District Court for the Northern District of Ohio, Eastern Division, the said company having been adjudged a bankrupt on the 21st day of June, 1921. The proceeding in the lower court was an action at law to recover from the defendant $6,000, and interest, upon a written subscription made by him on January 5, 1920, in which he subscribed for thirty shares each of the common and preferred stock of the company.

The defendant for his defense to the amended petition filed in that action alleged in his answer that on the 10th day of January, 1920, he withdrew his subscription for the stock, before it was accepted by the company, and also that such subscription was obtained by the fraud and misrepresentation of the officers and agents of the company. A reply was filed by the plaintiff to this answer, the case went to trial upon the issues joined in the pleadings, and the jury returned a verdict for the defendant. A motion for a new trial filed by the plaintiff was overruled, judgment was entered upon the verdict in favor of the defendant, and the case is now here on error to reverse that judgment.

The plaintiff alleges two principal grounds of error for reversal: first, that the court erred in refusing to give plaintiff's request to charge before argument, in which request the plaintiff stated that it was necessary for defendant to prove the alleged fraud and misrepresentation by clear and

convincing evidence, the court charging that a pre-
ponderance of the evidence was all that was neces-
sary; and, second, that the verdict of the jury was
manifestly against the weight of the evidence.

The defendant denies that there are errors in
the record as alleged by the plaintiff, but says that
if there are, they are harmless for the following
reasons: First, that the plaintiff is not entitled
to a review in this court because an exception was
not taken to the entry of the judgment in the
lower court; second, that the company did not
comply with Sections 6373-1 to 6373-24, both in-
clusive, General Code, commonly known as the
Blue Sky law; and, third, that the subscription was
a conditional subscription and that he withdrew
it before it was accepted by the company.

We will consider the claims of the defendant
before we consider the alleged errors of the plain-
tiff, because if any or all of the defendant's
claims are correct, then, as a matter of law, plain-
tiff would not be entitled to recover. We will take
up the claims of the defendant in the order as
hereinbefore stated.

Claim No. 1. The order of the court in over-
ruling the motion for a new trial is in the follow-
ing language, to-wit, "and thereupon  *  *  *  this
cause came on to be heard on the motion of the
plaintiff to  *  *  *  grant plaintiff a new trial
herein and on due hearing and on due consideration
the court overrules said motion to which ruling of
the court the plaintiff then and there excepted.
Thereupon it is by the court considered that the
defendant go hence without day, and recover of the
plaintiff his costs herein expended taxed at $——,

for which judgment is hereby rendered against the plaintiff." The part on which the claim of the defendant is based relates to the failure of above journal entry to show that an exception was taken to the entry of the judgment on the verdict after the overruling of the motion for a new trial.

In some counties in this state the practice has been to have the complaining party take an exception to the entry of the judgment, and in others it has not been. It was early held by the Supreme Court that an exception was not necessary. In a similar situation, in the case of *Justice* v. *Lowe,* 26 Ohio St., 372, in the first syllabus, the court held:

"The sections of the code providing for taking exceptions, have no application to final judgments or orders."

And in its opinion, on page 375, the court says:

"The same question now raised was decided in the case of the *Commercial Bank of Cincinnati* v. *Buckingham,* 12 Ohio St., 402, and the opinion of the court in that case clearly shows that the sections of the code providing for taking exceptions have no application to cases like the present."

The same principle has been announced in other cases in this state, but in our judgment the citation thereof is unnecessary. We are, therefore, of the opinion that there is no merit in this claim of the defendant.

The second claim of the defendant is based upon the alleged noncompliance by the company with exception "F" in Section 6373-2, General Code, a part of the "Blue Sky" law, before it received the subscription of the defendant. This exception pro-

vides that the president and secretary of a corporation shall file with the state commissioner of securities, prior to the disposal of its stock, a written statement setting forth certain facts. Exception "F" reads:

"The issuer, organized under the laws of this state where the disposal in good faith and not for the purpose of avoiding the provisions of this act, is made for the sole account of the issuer, without any commission and at a total expense of not more than two per centum of the proceeds realized therefrom plus five hundred dollars and where no part of the issue to be disposed of is issued, directly or indirectly, in payment for patents, services, good will, or for property not located in this state; provided that the president and secretary, or the incorporators if done before organization, of the issuer shall, prior to such disposal, file with the 'commissioner' a written statement setting forth the existence of all such facts and that such issuer is formed for the purpose of doing business within this state."

And if the statement mentioned in above section is filed, then a license under said law does not have to be obtained by the company.

The amended petition of the plaintiff did not allege the compliance by the company and its officers with the provisions of above section, nor did the defendant file a motion or demurrer to said petition, or set up the noncompliance in his answer as a defense to the petition, but at the bottom of page 45 and top of page 46 of the bill of exceptions we find the following reference to

the matter now under discussion, over the objection and exception of the plaintiff, to-wit:

"Also, it is stipulated and agreed by counsel for the plaintiff, (although in no wise conceding the competency and relevancy of such evidence in the trial of this case), that at no time prior or subsequent to the offer of the 5000 shares of common stock and 5000 shares of preferred stock of the Portage Rubber Co. referred to in the resolution of its board of directors to its stockholders of record, in December, 1919, was any copy of said resolution or any other information or data in regard thereto filed with the Securities Commission of the State of Ohio, under the provisions of the law known as the Blue Sky Law of Ohio, nor was any certificate filed by the officers of The Portage Rubber Company asking for the sale of the proposed offer of the proposed stock to its stockholders, or that the same be sold at an expense not exceeding two percent (2%) of the gross sales made or to be made, or that any part of the proceeds realized or to be realized from such sale or offer should be used for the purchase of patents or good will."

If compliance with said section was necessary as a condition precedent to a valid contract, and the same was an illegal contract without it, the question arises: Was the right to complain on this ground not waived by the defendant by his failure to present the question by a proper pleading, and did not the court err in admitting the foregoing stipulation?

Section 11311, General Code, provides that if the grounds of a demurrer to the petition do not ap-

pear on the face of the petition, the objection may be taken by answer, and that if objection is not taken to the petition either by demurrer or answer the defendant waives the same, except only when the court does not have jurisdiction of the subject-matter of the action and the petition does not state facts sufficient to show a cause of action.

The bill of exceptions further shows that after the jury was impaneled, and before any evidence was offered by the plaintiff, the defendant objected to the introduction of any evidence, which motion was overruled and exception taken. The question therefore arises, Did the amended petition state a cause of action against the defendant without alleging said noncompliance? In our judgment it did, the presumption being that the company and its officers had complied with the law hereinbefore referred to, it being a penal statute. And if such compliance was necessary as a basis for a valid contract between the company and defendant, such noncompliance was a matter of defense and should have been set up in the answer. (See opinion in *The K. B. Co.* v. *Batie,* 2 C. C. (N. S.), 358, and the opinion in *Walsh* v. *J. R. Thomas' Sons,* 91 Ohio St., at 212 and 213.) We are therefore of the opinion that there is no merit in this claim of the defendant, and that when the trial judge admitted the foregoing stipulation over the objection of the plaintiff he committed error prejudicial to plaintiff.

The third claim of the defendant is that his subscription was conditional and that he withdrew it before it was accepted by the company.

On the 19th day of December, 1919, the authorized capital stock of the company was ten million

dollars, five million dollars of which was 7% cumulative preferred stock, divided into 50,000 shares of $100 each, and five million dollars of which was common stock, divided into 50,000 shares of $100 each, and on said day there were issued and outstanding 11,344 shares of its authorized preferred stock, and 23,619 shares of its authorized common stock. On that day the directors of the company passed the following resolution, to-wit:

"Whereas, In order to obtain additional capital for the purpose of enlarging its plant and providing the funds necessary to take care of the growth and increase in its business, the Board of Directors of the Portage Rubber Company deemed it advisable to sell a certain amount of its unissued capital stock, both preferred and common.

"Therefore be it Resolved: That there be offered to the present holders of common stock five thousand (5,000) shares each of the unissued preferred and common stock of the corporation, each stockholder to be entitled to subscribe for both preferred and common stock at par, in an amount of each equal to twenty per cent. (20%) of his present holdings of common stock, all subscriptions to be on file in the company's office at Barberton, Ohio, on or before the close of business on the 10th day of January, 1920, and to be payable either in full February 5, 1920, or 25 per cent. on that date, 25 per cent. March 5, 1920, 25 per cent. April 5, 1920, and 25 per cent. May 5, 1920."

In pursuance of the provisions of this resolution the president of the company sent on December 24, 1919, to its common stockholders, of which the de-

fendant was one, a letter, of which the following is a copy:

"We are pleased to advise you that since the change in management which became effective on September 17, 1919, our business has been stimulated to such an extent that we must provide for future expansion and take care in a satisfactory way of the additional volume already booked.

"With these facts developing under their immediate observation, your directors realize that to take care of the increased business, which will make necessary plant additions, as well as largely increased inventories of materials, there will have to be provided additional funds. They have therefore voted to sell five thousand (5,000) shares each of common and preferred stock of the company now in its treasury to our stockholders at par.

"Each stockholder will be entitled to subscribe for one share each of common and preferred stock for each five shares of common stock now owned. In other words, each stockholder has the right to subscribe for the new stock up to twenty (20) per cent. of his present holdings of common stock, but he must subscribe for both common and preferred in equal amounts. He cannot subscribe for common alone, nor for preferred alone.

"The directors requested me to advise the stockholders accordingly, and to caution each one to send his subscription to the office at Barberton on or before January 10, 1920. The right to subscribe will absolutely end on that day.

"Enclosed herewith you will find two subscription blanks—one to be mailed to the company—.the other to be kept by you for reference. Do not

neglect to make your subscription at once, for the time within which it can be made is short and will quickly slip by.

"It is with great personal pleasure that I convey the foregoing information to you stockholders, and bespeak for our company a very prosperous year 1920."

This letter was received by defendant, and on the 5th day of January he filled out and signed the subscription blank therein referred to, a copy of such subscription being as follows:

"I, the undersigned, being a holder of common stock of the Portage Rubber Company, hereby subscribe for my pro rata share of the common and preferred stock of said the Portage Rubber Company offered for sale by you when as and if issued as set forth in the letter of Mr. M. S. Long, President of said the Portage Rubber Company, addressed to the stockholders of the company under date of December 24, 1919.

"My holdings of common stock of the Portage Rubber Company at the opening of the stock books of said company on the morning of Jan. 3, 1920, were 150 shares, as evidenced by certificates for said number of shares duly signed and executed, now in my possession and registered in my name. My subscription therefore based on 20% of such holdings, is and I hereby subscribe for 30 shares of each of common and preferred stock, for which I hereby agree to pay to the company at the rate of one hundred dollars ($100) per share, each of both common and preferred stock, payable as follows: 25% thereof on February 5, 1920; 25% thereof on March 5, 1920; 25% thereof on April 5, 1920;

25% thereof on May 5, 1920; or payable in full on February 5, 1920, at my election  *  *  *."

The subscription was accompanied by his letter of same date, a copy of which is:

"Find enclosed subscription as per notice. I ask for information: if I pay for all of my pro rata stock as soon as notified by the company will my stock be entitled to a dividend from the date of payment or will the stock be dated from May 5, 1920. I write this as I could as well pay the cash now as well as later if I am allowed dividends from the time of payment. Will you please answer this and say just what stock I am entitled to and if the stock is to draw dividends from the date of payment I probably will pay for the same at once. * * *

"What about the balance of stock left not taken by stockholders: is this to be pro rated to those that are willing to take more or sold on the market?"

On January 6, 1920, the company in answer to this letter sent to defendant a letter, of which the following is a copy:

"Replying to yours of the 5th inst. will say that all stock paid for on or before February 5th will be dated February 6, 1920, and will draw pro rata dividends thereafter.

"According to our records you held on or before January 3, 1920, one hundred fifty shares of common stock which entitles you to subscribe for thirty shares each of common and preferred.

"With reference to the balance of the stock left which is not taken by stockholders, of course, we cannot tell at the present time whether there will

be any or not. That will be taken care of later
* * * ."

On January 10, 1920, the defendant wrote a letter to the company, of which the following is a copy:

"I have read the report of the Portage Rubber Co. in the Plain Dealer and am surprised at this report. Before I purchased my stock in 1917 I called at your factory for information concerning the financial standing of the company and was informed that it was all 'O. K.' and the stock was worth $165 per share and at about this price I paid for my common stock. Now after over two years of the best times in the history of the rubber business I see that the common stock is quoted worth $85 per share and within this period hundreds of new rubber companies have been organized and have made good. It does appear that there must be something radical out of place or their has been a great game of profiteering—so much so that I don't care to take my proportion of stock that I have notified you that I would take before I read this report. So I hereby ask you to cancel this order from me through a letter. If you had given us a true report which you should have done before you sent out your offer I should have rejected it at once."

The question therefore arises as a matter of law from the conceded facts set forth in the foregoing copies, Did the defendant have a right to withdraw his subscription, or when he sent his subscription to the company, and it was received by the company, did it constitute a completed contract between him and the company?

Section 8699, General Code, under which the stock was to be issued, provides as follows:

"The holders of record of the common stock of a corporation shall have the right, when and as issued, to subscribe for the increase stock or for new issues of stock of such corporation in such proportion as their respective common shares bear to the whole number of common shares already issued, at such price as the board of directors may fix. If any holder fails to avail himself of such right within the time fixed by the board of directors, the stock so unsubscribed may be disposed of in such manner as the board of directors prescribe. The right of any stockholders to subscribe for such stock shall not apply to any authorized and unissued stock appropriated by the board of directors, either for the purpose of retiring preferred stock or for any other purpose."

It is conceded that the company had the authorized and unissued capital stock as claimed in the petition, and as hereinbefore set forth, before the resolution was passed, and that the board of directors passed the foregoing resolution, and that in pursuance thereof and the letter of said president the defendant sent in said subscription.

It is the contention of the defendant that the words "when, as and if issued" contained in the written subscription made it a conditional one, which gave the defendant the right to withdraw it before it was accepted. The defendant further claims that these words required the company to accept the subscription by an actual tender of the stock certificates representing the number of shares for which the defendant subscribed, and that be-

fore such tender, which was never made, he could withdraw his subscription, which he did in his letter of January 10. The defendant also claims that it was incumbent upon the company to take affirmative action of some sort to accept said subscription, which it did not do after it was received by it, and that the said subscription constituted merely a continuing offer to the company to take the stock, which was not accepted by the company, and that defendant had a right to withdraw it before it was accepted.

The foregoing section of the code gave the defendant and other stockholders the right to subscribe for their proportionate amount of the new stock. How and under what condition? Why, "when and as issued," dependent upon the action of the board of directors. So, when said board passed the resolution of December 19, 1919, the stock mentioned therein, so far as the company and its stockholders were concerned, was immediately changed in contemplation of law from unissued to issued stock, and the words "when and as issued," in the section, and the words "when, as and if issued," in said subscription, had the same meaning, so far as this case is concerned, and do not mean subsequent action by the board of directors, but refer to and mean the prior action of the board of directors upon which the letter of December 24, 1919, was based. This meaning is clearly implied in the language used in said section of the code, and the stock had to be issued before a subscription could be made or received for any part of it, and the issuance or nonissuance of stock certificates, or a tender or nontender of them to defend-

ant, did not affect the rights of either party. Therefore, when the company received the subscription from defendant it was a full and unconditional acceptance by him of the company's offer, made and authorized under Section 8699, to subscribe and take the number of shares to which he was entitled under said section, being the number set forth in his subscription. This, then, became an executed contract between the parties, the obligation of the company being to allot and set aside upon its stock book and records to and for the defendant the shares of stock for which the defendant had subscribed, and, upon receipt by it of the price therefor, to issue to him certificates of stock as evidence of his new shares in said company.

A corporation being an invisible and intangible thing, and existing only in contemplation of law, the shares which each shareholder owns, or to which he becomes entitled, are also an invisible and intangible thing, existing only in contemplation of law and in the minds of the parties interested therein. When a certificate of stock is issued, it is like a promissory note, which is not the debt itself, but only evidence thereof; and so the stock certificates are not the shares which the shareholder owns but only evidence of the interest of the stockholder in the company. We are therefore of the opinion that the subscription to said stock by said defendant was not a conditional subscription which could be withdrawn by him, and constituted in law a written promise to pay to said company the amount stated in said subscription upon the terms contained therein, and a tender of the certificates of stock was not a necessary action precedent to the

right of the plaintiff to recover on such subscription. We, of course, recognize the difference between a sale of stock and a subscription for stock, holding as we have before indicated that this is a subscription. We therefore hold that there is no merit in this claim of the defendant.

Having disposed of all of the claims of the defendant, we will now proceed to determine whether there is any merit in the errors alleged by the plaintiff, which he claims occurred upon the trial of the cause to the jury.

The first assignment of error claimed by the plaintiff relates to the refusal of the court to charge before argument, as requested, and to the charge of the court as given, wherein it was stated that the defendant was entitled to a verdict at the hands of the jury if he proved the charges of fraud and misrepresentation by a preponderance of the evidence.

The plaintiff submitted three requests to be given before argument, one of which was given and two of which were refused, but there was no exception taken by the plaintiff to the court's refusal to give these requests; but, after argument, and before the general charge was given, the court was again requested to give the requests refused as a part of its general charge, which the court refused to do and exception was taken. These at least had the effect of challenging the court's attention to the claims of the plaintiff as to the amount of proof required to sustain the allegations of fraud and misrepresentation set up by the defendant, but the court in its general charge told the jury that it was incumbent upon the defendant to prove the allega-

tions of fraud by a preponderance of the evidence, and refused to charge that it was necessary to do so by clear and convincing evidence, as claimed by the plaintiff, to which general charge the plaintiff duly excepted. It must be borne in mind in this connection that by the plaintiff's petition he had an action at law for money only, and that the second ground of defense alleged in the answer was also one in law, wherein the defendant set up the alleged fraud and misrepresentation to defeat the apparent legal obligation growing out of his subscription.

It will be observed that the defendant in his answer tendered an issue of fact, to be determined by the jury, and which if proved constituted a complete and full defense. *Quebec Bank of Toronto* v. *Weyand & Jung,* 30 Ohio St., at page 130. In his answer defendant admitted that he signed the written subscription which was the basis of this suit, and did not deny upon the trial that the subscription set forth accurately its terms and conditions, and there was no claim made that it did not fully set forth what the defendant intended to have contained therein, the contention of the defendant being that he signed the subscription through the fraud and misrepresentation of the officers and agents of the company; that this fraud and misrepresentation were what induced him to sign the same. It will be observed that the defendant was not attempting to avoid the subscription because of any inherent misrepresentations in it, but solely through the representations which induced him to sign it, and the plaintiff claims that under these facts, it being a case of fraud, the defendant ought

to have proved these allegations by clear and convincing evidence.

With this contention of the plaintiff we do not agree, although we recognize such a rule in various cases and under various circumstances, but mostly in equity, and in cases where the complaining party seeks to establish by parol testimony a modification or cancellation of the instrument which he signed. In these cases the evidence is introduced to annul, contradict or vary the terms of a written instrument, the claim being that the instrument itself does not set forth the terms intended to be therein, the courts holding that if the complaining party desires to modify or avoid what he has put in writing, because the writing does not accurately set forth what he intended to have therein, he ought to prove by clear and convincing evidence that what he has written and signed is incorrect. In the instant case the terms in the writing are admitted to be correct and accurately stated, and the evidence of the defendant does not attempt to vary or contradict them, but the defendant claims that wholly through the inducement of plaintiff's agents, made prior thereto, he signed said writing.

The plaintiff has cited several cases in support of his claim that the proof in this case ought to have been established by clear and convincing evidence.

The cases of *Jones* v. *Pickle,* 7 Ohio App., 33, 27 O. C. A., 413, and *Edwards Mfg. Co.* v. *Perry,* 4 Ohio App., 390, 22 C. C. (N. S.), 422, were cases of fraud, where the releases were signed by the parties upon the theory that they were signing receipts for money instead of releases; in other

words, where the parties signed one sort of an instrument when they thought they were signing another, which, if proved, made the instrument void, and not voidable, and falling within the rule hereinbefore stated where evidence is introduced to contradict or vary or annul something that the parties had put in writing.

The case of *McDonald & Frazier* v. *Schervish*, 26 C. C. (N. S.), 394, cited by the plaintiff, was also, according to the opinion, a suit to set aside a contract in writing, to-wit, a policy of insurance, and the court in that case held that it must be done by clear and convincing evidence.

The other cases cited by plaintiff likewise do not contain facts similar to the ones in the instant case, and all of the facts are easily distinguishable from the facts in the instant case. For that reason we do not think they are controlling.

We think the law upon this question in Ohio is settled, and settled correctly, in the cases of *Jones, Stranathan & Co.* v. *Greaves*, 26 Ohio St., 2, and *Mason* v. *Moore*, 73 Ohio St., 275.

In the *Stranathan case*, Greaves sued to recover a balance for labor and material in tin roofing a building of Jones, Stranathan & Company, under a special contract, he claiming that he was to furnish "the best quality of roofing tin" and was to be paid $1,100, which Jones, Stranathan & Company agreed to pay. Afterwards Greaves furnished the foregoing quality of tin, and Jones, Stranathan & Company claimed that he was to furnish a better quality of tin, which was worth $4 per box more, and in order to induce him to rebate $4 a box for the tin used they fraudulently

changed the specifications upon which the contract was based by inserting the words "IX charcoal tin." After the contract was modified, rebating the price, Greaves discovered the fraud and sued for the original amount of the contract, $1,100. On trial in the lower court, the defendants requested the judge to charge that before the jury could find them guilty of the fraud alleged by Greaves the jury must be satisfied from the evidence beyond a reasonable doubt. This the trial court refused to do, but charged that a preponderance of the evidence would be sufficient to prove the fraud. The Supreme Court held that there was no error in the refusal to charge as requested, or in the charge as given by the trial court, and, in setting forth the law of that case, the syllabus reads:

"On the trial of a civil action wherein the claim or defense is based on an alleged fraud, the issue may be determined in accordance with the preponderance or weight of evidence, whether the facts constituting the alleged fraud do, or do not, amount to an indictable offense."

In the case of *Mason* v. *Moore, supra,* Mason purchased some stock in a national bank, in which Moore and others were directors, his claim being that the directors had put out a false and fraudulent statement of the condition of the bank, that relying upon the same he purchased, from a third person, ten shares of stock in the bank and paid $1,000 therefor, and that after the failure of the bank, which occurred shortly after he purchased the stock, he was required to pay an additional $1,000 under the national banking law. In his charge to the jury, the trial judge said:

"It must appear by a preponderance of the evidence, that at the time of the attesting and publication of said report, that the directors so attesting this report, or who assented to and directed the publication of the same, did so knowing the report to be false, or, under such circumstances as will warrant the jury in finding by a preponderance of the evidence, that such directors, by the exercise of ordinary care and prudence would have known that said report was false in some one or more of the particulars set forth in the petition."

This charge of the court was approved by the Supreme Court in the third syllabus of the foregoing case, and it seems to us these two cases clearly settle the law of this state in cases of this kind. We know of no reason why a person alleging fraud, as the defendant did in this case, should be required to prove it by any higher degree of proof than is required in the trial of an ordinary civil case to a jury. We therefore hold that the first ground of error alleged by the plaintiff is not well taken, and that the court did charge properly upon this subject.

The second assignment of error urged by the plaintiff is that the verdict of the jury is manifestly against the weight of the evidence.

Having already taken much time and space in setting forth our decision in this case, we will say that we have read all of the evidence contained in the bill of exceptions, and, although we find some evidence justifying and requiring the submission to the jury of the issue of fraud and bad faith tendered in the pleadings, without setting out in detail and analyzing such evidence we are unani-

mously of the opinion that the verdict of the jury is manifestly against the weight of the evidence.

We also desire to say that the evidence of the defendant relative to what he saw and read in the newspaper was hearsay, and was improperly admitted for the consideration of the jury, and, taken in connection with the improper admission of the evidence in regard to the noncompliance of said company with the Blue Sky law, was prejudicial to the plaintiff.

For the reasons stated the judgment of the trial court is reversed, and the cause remanded to that court for further proceedings as provided by law.

*Judgment reversed, and cause remanded.*

FUNK, P. J., and WASHBURN, J., concur.