**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3148
_____

Imad Jaffal,
Appellant

v.

Director Newark New Jersey Field Office Immigration &
Customs Enforcement; Director United States Immigration
and Customs Enforcement; The Attorney General of the
United States of America; Secretary United States
Department of Homeland Security

_____

On Appeal from the District Court for the
District of New Jersey
(D.C. No. 2-18-cv-05237)
District Judge:  Hon. Stanley R. Chesler

_____

Argued on July 15, 2021

Before: McKEE, GREENAWAY, JR., and RESTREPO,
*Circuit Judges*

(Opinion filed: January 19, 2022)

Alexandra V. Tseitlin          (**Argued**)
Tseitlin Law Firm P.C.
345 Seventh Avenue, 21st Floor

New York, NY 10001
*Counsel for Appellant*

Enes Hajdarpasic, Assistant United States Attorney
J. Andrew Ruymann
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Merrick Garland, United States Attorney General
Brian M. Boynton, Acting Assistant Attorney General
William C. Peachey, Director, District Court Section Office of
Immigration Litigation
Samuel P. Go, Assistant Director
Dhruman Y. Sampat, Trial Attorney          (**Argued**)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
*Counsel for Appellees*

───────────

OPINION OF THE COURT

───────────

McKEE, *Circuit Judge*

Appellant Imad Jaffal, born in Jordan, seeks a declaration that he is entitled to derivative U.S. citizenship under former 8 U.S.C. § 1432(a). That statute provides that "a child born outside the United States automatically acquires United States citizenship if, while the child is under the age of eighteen, the parent with legal custody of the child is naturalized while that child's parents are legally separated."[1] Jaffal's father was naturalized when Jaffal was seventeen years old, and Jaffal presented evidence to the District Court that he was in the sole legal custody of his father when his father was

─────────────

[1] *Morgan v. Att'y Gen.*, 432 F.3d 226, 228 (3d Cir. 2005).

2

naturalized and his parents were separated. The District Court, however, declined to accept Jaffal's evidence of his parents' divorce. Because we conclude that was error, we will reverse the order of the District Court and remand the matter with instructions to issue a judgment declaring Jaffal to be a national[2] of the United States.

**I.**

The evidence presented to the District Court establishes the following facts. Imad Jaffal's parents, Naim Khalil Ismail Jaffal (father) and Nimeh Amin Odetallah Musleh (mother), were married in Amman, Jordan, on January 19, 1963.[3] Appellant, Imad Jaffal, was born in Amman, Jordan, on March 20, 1965.[4] Appellant came to the United States as a lawful permanent resident with his parents and siblings when he was eleven years old. Between 1979 and 1982, Jaffal and his family lived in Cleveland, Ohio.[5]

In 1981, Jaffal's mother traveled from Ohio to Jordan and remained in Jordan from January to April,[6] and returned again in September and stayed into October.[7] In September 1981, Jaffal's father also traveled to Jordan and met with Jaffal's mother. There, he divorced Jaffal's mother pursuant to Jordanian law, by declaring first to her and then to a Sharia Judge that he was divorcing her.[8] After divorcing Jaffal's

---

[2] Pursuant to 8 U.S.C. § 1101(a)(22), "[t]he term 'national of the United States' means (A) a citizen of the United States[.]"
[3] App. 40.
[4] *Id.*
[5] *Id.*
[6] App. 287.
[7] App. 236, 238 **("Because [my husband and I] had a problem between us . . . I went to Jordan for a few months in 1981. . . . He came to Amman [in September]. We had a fight over there. He divorced me verbally. And I came, around two weeks after that, I came back. . . . I think around October.")**.
[8] App. 500 **(documenting Naim Jaffal's travel to Jordan in September 1981)**; App. 246–48 ("We had an argument. We always had arguments. And he divorced me. In Muslim way, he divorced me verbally."); App. 40 ("*Document of*

mother, Jaffal's father obtained sole legal custody of Jaffal and three of Jaffal's siblings.[9]

Following the divorce, both of Jaffal's parents returned to Ohio. Jaffal's mother lived in the family home for a few months and then moved out to live with her mother and sister in a house in the same neighborhood.[10] Jaffal continued to live in the family home with his father and siblings.[11] Jaffal's father was naturalized in April 1982, when Jaffal was seventeen years old.[12] Jaffal's father died on November 10, 1984.[13]

In March 2016, Jaffal filed an N-600 Application for Certificate of Citizenship, seeking derivative U.S. citizenship through his father.[14] USCIS denied his application and his subsequent Motion to Reopen.[15] Thereafter, Jaffal brought this action in the District Court for the District of New Jersey seeking a declaratory judgment under 8 U.S.C. § 1503(a) that he was entitled to derivative citizenship under 8 U.S.C. § 1432(a).

Jaffal presented evidence of his parents' separation and his father's legal custody determination to the District Court. The following four documents are relevant to this appeal:

- **"Document of Revocable Divorce/ First Statement" ("Jordanian Divorce").**[16] This document is dated January 26, 2016, and it was obtained by a lawyer hired by Jaffal's

---

*Revocable Divorce/ First Statement*"); App. 61 **("Divorce Acknowledgement Deed.")**.

[9] *See* App. 59 ("*Legal Authentication Court Proof of Legitimacy sole Custody*").

[10] App. 236–37 **("He divorced me verbally. And I came, around two weeks after that, I came back [to our home in Ohio]. We stayed, I stayed by him around a month or two. So he said, 'I divorced you after three months, we are Muslim, I divorced you, why are you staying with me?' So after that, I went to stay by my mother and my sister.")**.

[11] App. 182–83.

[12] App. 283.

[13] App. 285.

[14] App. 322–26.

[15] App. 330–33.

[16] App. 40.

mother on a visit to Jordan.[17] The document is a sworn statement by the Sharia Judge in Amman who performed Jaffal's parents' divorce in 1981. In the document, the Judge states that Jaffal's father appeared before him on September 12, 1981, and orally divorced Jaffal's mother, making the statement in front of two witnesses.[18] The document also states that the divorce became irrevocable three months after the initial separation because Jaffal's father did not remarry his mother during the three-month waiting period.[19]

- **Letter from Osamah Salhia**.[20] In this letter to the court, Imam Osamah Salhia explains the procedure for divorce under Sharia Law in Jordan. The letter states that the Imam reviewed the Jordanian Divorce and its certified translation, which affirmed that Jaffal's parents' divorce was "registered in the Sharia Court of the Hashemite Kingdom of Jordan pursuant to the marriage contract No. (146398)" and that "[t]he divorce was executed on 12/09/1981" (September 12, 1981).[21] It also explains that "[t]he initial decree issued by the court was a revocable divorce. In Islamic law, a revocable divorce is one that can be reinstated without a new marriage contract."[22] The requirement "for a revocable divorce to be recognized is for remarriage to occur during the waiting period, which is a period of approximately three months. If the marriage is not reinstated during the waiting period, the marriage is officially terminated."[23]

- **"Divorce Acknowledgement Deed."**[24] This document, dated January 15, 2017, and signed by Dr. Omar Hasan Al Khreisat, a Supreme Judge of the South Amman Legal Court, states that Jaffal's mother appeared before the judge

---

[17] App. 249–50.
[18] *Id.*
[19] *Id.*
[20] App. 69.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] App. 61.

and affirmed that she was married to Jaffal's father in 1963 and divorced from him on September 12, 1981.[25]

- **"Legal Authentication Court Proof of Legitimacy Sole Custody."**[26] In this document, dated June 6, 2016, a Sharia Judge declares that Imad Jaffal and three of his siblings were born to Jaffal's parents, and "were living with their Father Naim Jaffal who [g]ained full custody as of 09/15/1981."[27]

Jaffal argued that these documents definitively demonstrated that his parents were legally separated in September 1981 and that he was in the sole custody of his father when his father was naturalized in 1982. On this basis, he claimed he was eligible for derivative citizenship under § 1432(a).

The government moved for summary judgment, arguing that Jaffal "ha[d] no evidence to prove two essential elements of his claim: 1) Plaintiff cannot establish that a legal separation had occurred at the time of his father's naturalization; and 2) Plaintiff cannot establish that his father had legal custody of him at the time of his father's naturalization."[28] The Court agreed, reaching only the first issue, legal separation. It ruled that the Jordanian Divorce "on which Plaintiff relies to meet the legal separation requirement is not entitled to recognition under Third Circuit law."[29] It found that under *Perrin v. Perrin*,[30] our precedent requires that the divorce or separation

---

[25] *Id*. Jaffal's mother stated, "[W]e were divorced, and we separated each other since that date." *Id*. She acknowledged that "[her] waiting period from such divorce had been elapsed which classif[ied] such divorce [as] final and absolute as he did not bring [her] back to his marriage bond since [the] date of divorce." *Id*.

[26] App. 59.

[27] *Id*. The document provides that it was "[a]pproved and sealed by the Court and approved and sealed by the Jordanian Ministry of Foreign affairs." *Id*.

[28] *Jaffal v. Thompson*, No. 18-5237, 2020 WL 6074473, at *2 (D.N.J. Oct. 15, 2020).

[29] *Id*.

[30] 408 F.2d 107, 111 (3d Cir. 1969).

proceeding be "bilateral," meaning that both parents must have appeared either in person or through counsel. The Court rejected Jaffal's claim because his parents' divorce was unilateral.[31] It found no evidence that Jaffal's "mother participated in the Jordanian Divorce in any way."[32] Accordingly, "[p]ursuant to *Perrin*," it found "the Jordanian Divorce is not recognized under Third Circuit law."[33]

In addition, the Court concluded that the Jordanian divorce was not issued by a court of competent jurisdiction.[34] It found that "[u]nder our system of law, judicial power to grant a divorce – jurisdiction, strictly speaking – is founded on domicil [sic]."[35] And the Court found that there was "no dispute that, at the time of the Jordanian Divorce, Plaintiff's mother and father were both domiciled in the state of Ohio."[36] Since the Court concluded that Jaffal could not demonstrate the legal separation prong of § 1432(a), it did not address whether Jaffal was in the sole legal custody of his father at the time of his father's naturalization. Instead, the Court granted summary judgment to the government. Jaffal timely appealed.[37]

## II.

The District Court had jurisdiction to consider Jaffal's claim for derivative citizenship under 8 U.S.C. § 1503(a). Section 1503(a) provides the mechanism by which an individual "may institute an action . . . for a judgment declaring him to be a national of the United States."[38] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[31] *Jaffal*, 2020 WL 6074473, at *3.

[32] *Id*.

[33] *Id.* at *4.

[34] *Id*.

[35] *Id*. (quoting *Williams v. North Carolina*, 325 U.S. 226, 229 (1945)).

[36] *Id*.

[37] **App. 609.**

[38] 8 U.S.C. § 1503 ("If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may

We review a district court's grant of summary judgment *de novo* and apply the same summary judgment standard as the district court.[39] We will affirm a grant of summary judgment only if, "after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, [we] conclude[] that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."[40]

## A. "Legal separation" under § 1432(a).

At issue in this appeal is 8 U.S.C. § 1432(a), which, as noted, "provides that a 'child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . . [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents.'"[41] "The child must also be under eighteen years of

---

institute an action . . . for a judgment declaring him to be a national of the United States.").

[39] *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019).

[40] *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019) (citation and quotations omitted).

[41] *Morgan*, 432 F.3d at 230 (alteration in original) (quoting 8 U.S.C. § 1432(a)). In greater detail, 8 U.S.C. § 1432(a) provides:

> (a) A child born outside of the United States of alien parents, . . . becomes a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and

age at the time of the parent's naturalization and be residing in the United States as a lawful permanent resident."[42] When these statutory conditions are met, the child is automatically entitled to U.S. citizenship.[43]

In October 2000, "Congress repealed § 1432 by enacting the Child Citizenship Act of 2000, ['CCA'] Pub. L. No. 106-395, 114 Stat. 1631,"[44] codified at 8 U.S.C. § 1431 *et seq.* However, because all of the relevant facts here occurred before the passage of the CCA, § 1432(a) controls Jaffal's claim to derivative citizenship.[45] The government does not dispute that Jaffal was residing in the United States as a legal permanent resident and was under eighteen years of age when his father was naturalized. Accordingly, the only disputed issues in this appeal are (1) whether Jaffal's parents were legally separated at the time of Jaffal's father's naturalization and (2) whether Jaffal's father then had custody of Jaffal.

We have analyzed the "legal separation" prong of § 1432(a) in two cases which are instructive here, *Morgan v. Attorney General* and *Espichan v. Attorney General*.[46] In *Morgan*, the plaintiff, a Jamaican national, sought derivative citizenship under § 1432(a). Similarly to Jaffal, she alleged that her parents had been "legally separated" when her parent having legal custody – her mother – was naturalized, and that she otherwise met the criteria for derivative citizenship under

---

> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

[42] *Morgan*, 432 F.3d at 230.

[43] *Id.*

[44] *Id.* at 230 n.1.

[45] *Id.* ("The [CCA], however, does not apply retroactively to persons, like petitioner, who turned eighteen before Congress passed the [CCA].").

[46] 945 F.3d 794 (3d Cir. 2019).

the statute.[47] We noted that the statute "does not contain a definition of the term 'legal separation,'"[48] and we therefore "defer[red] to the jurisdictions with authority over the marriage to determine the meaning of legal separation for purposes of § 1432(a)(3)."[49]

Plaintiff Morgan's parents had been married in Jamaica, but plaintiff's mother (and plaintiff) were living in Pennsylvania at the time of her naturalization. Accordingly, we concluded that "[i]n this case . . . *both* Jamaica and Pennsylvania had jurisdiction" over the marriage.[50] We therefore looked to whether either Jamaica or Pennsylvania had "decreed a separation."[51]

Looking first at Jamaica, we found that "[a]t the time of the petitioner's mother's naturalization in 1984, Jamaica recognized a right to a judicial separation which Jamaican law distinguished from absolute divorce."[52] We concluded "[t]here [wa]s no evidence that any Jamaican court ever issued a decree of judicial separation to the petitioner's parents,"[53] nor had any Jamaican court issued an absolute divorce. Having failed to find evidence of a legal separation under Jamaican law, we then looked to Pennsylvania law but found that no separation had occurred under Pennsylvania law either. We therefore concluded that Morgan's parents had not been legally separated under the statute.

We held that legal separation under § 1432(a) occurs "upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties."[54] We clarified, however, that "[t]he formal action need not necessarily be a judicial

---

[47] *Morgan*, 432 F.3d at 229.

[48] *Id*. at 231.

[49] *Id*. at 233.

[50] *Id*. at 234 (emphasis added); *see also id*. at 232 ("The law of a foreign country may be applicable in some instances as an alternate or in addition to state law.").

[51] *Id*. at 234.

[52] *Id.* at 233

[53] *Id*.

[54] *Id*. at 234.

decree."[55] Instead, we found that the state or foreign nation's law controlled the inquiry. A state or foreign nation could, for example, "allow an administrative agency or other governmental body to issue orders of separation."[56] Or, in some instances, there may be no need to show any government action. We concluded, "[c]onceivably, some jurisdictions might consider parties 'legally separated' if they lived apart for a period of time without seeking any governmental imprimatur."[57] But because "[w]e kn[e]w of no jurisdiction that ha[d] adopted such a policy" we left "that issue for another day."[58]

In *Espichan*, however, we encountered such a jurisdiction. There, we considered a plaintiff's claim for derivative citizenship under the same statute, § 1432(a). As in *Morgan*, we had to consider whether Espichan's parents had been legally separated at the time of Espichan's father's naturalization. Espichan's parents had been married in Peru. Our inquiry into legal separation therefore looked first to the family law of Peru. We found "[a]rticle 326 of the Peruvian Civil Code of 1984 provide[d] that '[a] union in fact ends by death, absence, mutual agreement, or unilateral decision,'"[59] and concluded that Espichan had demonstrated that his parents' marriage had ended by unilateral decision.

Espichan presented evidence that, in 1990, his mother "filed a complaint at the police headquarters in Callao, Peru, declaring as a matter of public record that she and Espichan's father, having lived together since 1970, separated in 1979."[60] Together with Espichan's submission of a declaration that such action was sufficient under Peruvian law to effectuate a divorce, we concluded that he had established *as a matter of law* that there was a legal separation.[61] In so concluding, we reaffirmed our analysis in *Morgan*. There, "we expressly acknowledged that there may be a case where the relevant

---

[55] *Id*. at 234 n.4.

[56] *Id*.

[57] *Id*.

[58] *Id*.

[59] *Espichan*, 945 F.3d at 800.

[60] *Id*. at 796.

[61] *Id*. at 801.

11

jurisdiction does not require any 'governmental imprimatur' for parties to become 'legally separated.'"[62] This appeal presents an example of such a case.

With these cases in mind, we turn to the District Court's denial of Jaffal's claim for derivative citizenship. The District Court found that Jaffal failed to show he was entitled to derivative citizenship because he did not show that his parents were legally separated when his father was naturalized. It declined to recognize the Jordanian Divorce because it concluded that the Jordanian Divorce "was not issued by a court of competent jurisdiction"[63] and that Third Circuit precedent requires that the divorce or separation proceeding be "bilateral." Both of these conclusions were erroneous.[64]

We again clarify today that determination of "legal separation" under § 1432(a) involves a limited inquiry. It is limited to whether the plaintiff has established that there was a valid divorce or legal separation under the law of a state or foreign nation having authority over the marriage. A court should not inquire into whether the action (or inaction if the relevant jurisdiction recognizes separation without any formal governmental action) taken to effectuate the divorce would be sufficient to result in a legal separation in any U.S. jurisdiction. Nor should a court impose any requirements in addition to those required under the state or foreign nation's law.

Appellees attempt to rely upon our holding in *Perrin* and principles of comity in arguing that we should not recognize the Jordanian divorce[65] even though it was undeniably valid under Sharia law.[66] However, principles of

---

[62] *Id*. at 800 (quoting *Morgan*, 432 F.3d at 234 n.4).

[63] *Jaffal*, 2020 WL 6074473, at *4.

[64] On appeal, the government repeats these claims, arguing that the District Court correctly declined to recognize the Jordanian Divorce because Jaffal did not present "evidence of participation by Jaffal's mother." Appellee Br. at 28. But this argument relies on the District Court's erroneous propositions.

[65] Appellee Br. at 20.

[66] App. 69. Imam Salhia of Al-Azhar University in Egypt, in a letter dated December 25, 2016, affirmed that the divorce

12

comity simply do not apply here because Congress specifically prescribed the effect of foreign decrees in §1432 cases. The two references to "comity" in *Perrin* merely highlighted the recognition of its principles in our decision to uphold the Mexican decree in a bilateral divorce proceeding.[67] Congress has clearly stated that, as long as a § 1432(a) petitioner establishes that a valid, legal separation was effectuated under the relevant state or foreign nation's law, s/he has met the burden of establishing a legal separation under § 1432(a). That statute is the policy of the United States, and we are not persuaded that concepts of comity in any way mitigate or negate that congressional expression of United States policy regarding foreign decrees for purposes of citizenship inquiries under § 1432(a).[68] For the same reasons, Appellee's attempts to argue the effect of the Full Faith and Credit Clause are simply unpersuasive.

### B. The District Court erred in failing to recognize the Jordanian Divorce.

Jordanian courts had authority to alter Jaffal's parents' marriage. As our analysis in *Morgan* makes clear, both the state in which Jaffal and his father lived at the time of naturalization, as well as the foreign marital country, could appropriately exercise authority over the marriage for the purposes of § 1432(a).[69]

---

was carried out in accordance with Islamic Law. He discussed the registration of the divorce in the Sharia Court of the Hashemite Kingdom of Jordan and verified the legal conversion of the initially "revocable divorce," upon expiration of the "waiting period," into an "irrevocable divorce."

[67] 408 F.2d at 109 and 111

[68] For a more thorough discussion of principles underlying the doctrine of comity, *see U.S. ex rel. Saroop v. Garcia*, 109 F.3d 165, 168-71 (3d Cir. 1997).

[69] *See Morgan*, 432 F.3d at 234 (concluding that "*both* Jamaica and Pennsylvania had jurisdiction" over the marriage) (emphasis added); *Espichan*, 945 F.3d at 799 (looking to Peruvian law to determine whether Espichan's parents had effectuated a legal separation according to the Peruvian Civil Code).

The District Court erroneously concluded that, under *Morgan*, the Jordanian Divorce was not issued by a "court of competent jurisdiction" because Jaffal had not shown that either of his parents were domiciled in Jordan.[70] In so concluding, the court ignored the fact that we did not require the plaintiff in *Morgan* to show that her parents were domiciled in Jamaica (where the divorce had allegedly been granted). To the contrary, the plaintiff and her mother in *Morgan* were living in Pennsylvania at the time of the naturalization, but we still took pains to first analyze the law of separation in Jamaica – that is, in the marital jurisdiction – to see whether a legal separation had been issued under Jamaican law.[71] Had Jamaican courts failed to be "courts of competent jurisdiction," we would not have looked to Jamaican law.[72] Since *Morgan*, our review of § 1432(a) claims has looked to the law of the jurisdictions having authority over the marriage. That has been the location where the couple was married and the state in which the naturalized parent resided.[73]

---

[70] *See Jaffal*, 2020 WL 6074473, at \*4.

[71] *Morgan*, 432 F.3d at 233.

[72] The court's reliance on *Perrin v. Perrin*, 408 F.2d 107 (3d Cir. 1969) for the proposition that "[o]rdinarily, the recognition in the United States of [] a foreign decree will depend upon whether at least one of the spouses was domiciled in the foreign state when the decree of divorce was rendered," *id*. at 109, was misplaced. *Perrin* was not a case in which we interpreted § 1432(a), and, in *Perrin*, we later held, "domicile is *not* intrinsically an indispensable prerequisite to jurisdiction." *Id*. at 110. We recognized the divorce at issue in that case, even though neither spouse was domiciled in Mexico, where the divorce took place.

[73] *See, e.g.*, *Espichan*, 945 F.3d at 799 (looking to Peruvian law). We note, too, that the laws of other foreign nations or states could also have authority over a marriage, if, for example, the married couple was issued a valid separation in a third location that was neither the marital country nor the state in which the parent was living at the time of naturalization. The bottom line is that if a plaintiff presents evidence of a valid separation under the laws of any jurisdiction having proper authority over the marriage, such

Accordingly, both Ohio and Jordan had authority over Jaffal's parents' marriage. The Jordanian court's actual exercise of jurisdiction by issuing the divorce in this case satisfies us that jurisdiction was proper under Jordanian law. Moreover, on appeal, the government does "not challeng[e] the validity of the divorce."[74] Instead, the government argues that the Jordanian Divorce should not be recognized by a U.S. court – at least for purposes of § 1432(a) – because only Jaffal's father appeared before the relevant tribunal.

The District Court noted that "Plaintiff alleges only that his father obtained a unilateral divorce in Jordan[.]"[75] The Court believed that recognizing such a proceeding for purposes of Jaffal's derivative citizenship claim "offend[s] . . . public policy," and that the Jordanian Divorce was not "recognized under Third Circuit law."[76] As noted, however, this directly contradicts our conclusion in *Espichan,* where we recognized a unilateral divorce for the purpose of § 1432(a). There we explained that the Peruvian Civil Code – the law governing the marriage at issue – allowed for a legal separation through "death, absence, mutual agreement, or unilateral decision."[77] Espichan presented evidence, unrebutted by the government,

---

evidence will be admissible to demonstrate the legal separation prong of § 1432(a).

[74] Oral Argument Transcript at 17. We note too that our own review of Jordanian law demonstrates that Jordanian courts had jurisdiction. Sharia Courts in Jordan have authority over marriages and divorces, with no mention of a domicile requirement. Instead, the only jurisdictional requirement in such courts is that the parties to the divorce be Muslim. *See, e.g.*, *Jordan*, U.S. Dep't of State, at 3, https://2009-2017.state.gov/documents/organization/171737.pdf ("The constitution [] provides that matters concerning personal status, such as religion, marriage, divorce, child custody, and inheritance, are under the exclusive jurisdiction of religious courts. Muslims are subject to the jurisdiction of Islamic law courts, which apply Islamic law adhering to the Hanafi school of Islamic jurisprudence[.]").

[75] *Jaffal*, 2020 WL 6074473, at *3.

[76] *Id*. at *3–4.

[77] *Espichan*, 945 F.3d at 800.

15

that his parents' marriage had been terminated by "unilateral decision" in Peru. No other inquiry was necessary, and none was undertaken. Rather, we concluded as a matter of law that Espichan's evidence of a unilateral divorce under Peruvian law satisfied the legal separation prong of § 1432(a). The District Court's concern for "public policy" in refusing to recognize a unilateral proceeding under Sharia law in Jordan ignores the fact that public policy is set forth in § 1432(a). There, Congress determined public policy for purposes of determining if someone should become a U.S. citizen based upon the naturalization of a custodial parent.

### C. The Jordanian Divorce establishes Jaffal's parents' legal separation as a matter of law.

Jaffal produced the Jordanian Divorce, a sworn statement by the Sharia Judge in Amman who performed his parents' divorce in 1981.[78] The document provides: "At the Sharia session held by me, I, Frelwan Al-Khawaldeh, . . . appeared before me the lawfully capable: Naim Khalil Ismail Jaffal . . . [who] stated that: 'I willingly and voluntarily want to divorce my wife Nimeh Amin Odetallah Musleh, a Jordanian national.'"[79] Judge Al-Khawaldeh swears that Jaffal's father stated, in front of two witnesses, "I say that my wife Nimeh Amin Odetallah Musleh with whom I had consummated the marriage, is divorced from my marriage contract . . . and I do hereby request to register and serve the divorce upon her."[80] The document also provides that the Judge instructed Jaffal's father "it has been decided to serve the [divorce] upon [Jaffal's mother] duly," and that the divorce took place on "12.09.1981" (September 12, 1981).[81]

---

[78] App. 40.
[79] *Id*.
[80] *Id*.
[81] *Id*. The document also provides that, as of January 26, 2016, "there is no entry indicating the remarriage between the said spouses (divorce parties) . . . . Therefore, this divorce has been turned into [i]rrevocable after termination of the period of waiting of the said wife (divorcee) since that we have not received what establishes that he ha[s] returned (remarried) her." *Id*.

16

As in *Espichan*, Jaffal also introduced evidence describing the procedure for obtaining a divorce under the relevant law.[82] Jaffal introduced a letter from Imam Osamah Salhia, which confirms that Jaffal's parents' divorce "was registered in the Sharia Court of the Hashemite Kingdom of Jordan pursuant to the marriage contract No. (146398)" and that "[t]he divorce was executed on 12/09/1981."[83] Moreover, the Imam confirms that "[t]he initial decree issued by the court [i]s a revocable divorce . . . one that can be reinstated without a new marriage contract" if remarriage "occur[s] during the waiting period."[84] "If the marriage is not reinstated during the waiting period, the marriage is officially terminated . . . render[ing] the divorce an irrevocable divorce."[85] The Imam concluded that "[b]ased on the court documents, the individuals concerned did not pursue remarriage, and hence, the court decreed that the marriage was officially terminated, and that decree was executed with the conclusion of the waiting period."[86]

In *Espichan*, a similar evidentiary showing was sufficient for us to conclude that, as a matter of law, Espichan's parents had been legally separated. Espichan presented "evidence showing that his parents dissolved their *de facto* marital union under Peruvian law," and "[b]ecause the Government [] failed to rebut Espichan's evidence tending to show that his parents had a legal separation, [we found] no genuine issue of material fact, and . . . decide[d] the issue as a matter of law" in Espichan's favor.[87]

The same result obtains here. The government has failed to present any evidence to rebut Jaffal's documentation of his parents' legal separation. To the contrary, at oral argument, on numerous occasions, the government conceded that it was "not challenging the validity of the divorce."[88] We took pains to clarify that issue and the government repeatedly represented

---

[82] *See* App. 69.

[83] App. 69.

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Espichan*, 945 F.3d at 800–01.

[88] Oral Argument Transcript at 14.

that the validity of the divorce (and, as we discuss below, the custody determination), was not being questioned.[89] Accordingly, we conclude, as a matter of law, that Jaffal's parents were legally separated at the time of Jaffal's father's naturalization.

### D. Jaffal was in the sole legal custody of his father at the time of naturalization.

Because the District Court concluded that there was no legal separation, it did not consider whether the only other contested requirement in this case had been satisfied: whether Jaffal was in the sole legal custody of his father when his father was naturalized. We employ a "two-step test [for] legal custody. First, if there is a 'judicial determination or judicial or statutory grant of custody,' then the parent to whom custody has been granted has legal custody for INA purposes."[90] A judicial determination of custody ends our inquiry. "Second, if no such determination or grant exists, the parent in 'actual uncontested custody' is deemed to have legal custody."[91]

Legal custody here is straightforward because there is a judicial grant of custody from the Sharia Court in Amman. That confirmed that Jaffal's father had full legal custody of Jaffal as of September 1981. The document, "Legal Authentication Court Proof of Legitimacy [S]ole Custody" signed by Judge Ali [F]aleh Almrei, states, in relevant part, that "Imad Jaffal born 1965" was "living with [his] Father Naim

---

[89] When asked, for example, "So you're not challenging the validity . . . of the divorce; correct?" *Id*. at 17. The government's attorney responded: "Your Honor, we're not challenging the validity of the divorce." *Id. See also id*. at 27 (stating that the government "is not taking issue of the validity of the divorce decree and the custodial decree for the purposes of this argument."); *id*. at 32 ("[B]ut you do concede that the divorce decree is valid. You do concede that?" "For the purposes of this argument, Your Honor."). *See also id*. at 12, 13, 22 (making similar concessions).

[90] *Bagot v. Ashcroft*, 398 F.3d 252, 259 (3d Cir. 2005) (quoting in *Matter of M—*, 3 I. & N. Dec. 850, 856 (BIA 1950)).

[91] *Id*. (quoting in *Matter of M—*, 3 I. & N. Dec. at 856).

Jaffal who Gained [sic] full custody as of 09/15/1981."[92] Again, the government presented no evidence to rebut this judicial grant of custody. Moreover, as is true for the Jordanian Divorce, the government conceded at oral argument that it did not challenge the validity of the custody determination.[93] That ends our inquiry.

The government nonetheless argues that we must analyze whether Jaffal's father had "actual uncontested custody" of Jaffal at the time of naturalization and claims that Jaffal cannot show that was the case.[94] But, as our caselaw makes clear, we only review "actual uncontested custody" where there is no judicial determination of custody.[95] We need not engage in that inquiry here because Jaffal presented an uncontested custody determination from a Jordanian court. That vests full custody of Jaffal in his father as of September 1981. Accordingly, we conclude, as a matter of law, that Jaffal was in the sole legal custody of his father at the time of his father's naturalization.

## III.

In sum, we hold that Jaffal's parents were legally separated at the time of Jaffal's father's naturalization and that Jaffal was then in the sole legal custody of his father. There are no contested issues remaining in this appeal. Because there is no debate as to whether Jaffal is otherwise eligible, we hold that Jaffal is entitled to derivative U.S. citizenship under § 1432(a).[96] For the reasons stated above, we will reverse the District Court's grant of summary judgment to the government

---

[92] App. 59.

[93] *See* Oral Argument Transcript at 27 (stating that the government "is not taking issue of the validity of the divorce decree and the custodial decree for the purposes of this argument").

[94] Appellee Br. at 44, 46.

[95] *See, e.g.*, *Bagot*, 398 F.3d at 260–61 ("[I]f, for example, a state court has entered a valid decree granting custody of a child to the child's father, then the father has 'legal custody' of the child.").

[96] Pursuant to the unambiguous text of 8 U.S.C. § 1432(a), one becomes a U.S. citizen "upon fulfillment of the . . . conditions" set forth in that statute.

and remand this matter to the District Court with instructions to issue "a judgment declaring [Jaffal] to be a national of the United States."[97]

---

[97] 8 U.S.C. § 1503.